# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOSEPH THERIAULT and WILLIAM WEIGEL, individually and on behalf of all those similarly situated, | **CONSOLIDATED CASES** |
| *Plaintiffs*, | Case No.: 2:23-cv-02477-JWB-ADM |
| v. | |
| NEW DIRECTION IRA, INC., NEW DIRECTION TRUST COMPANY, and MAINSTAR TRUST, | |
| *Defendants*. | |
| CHRISTY WALLACE, on behalf of herself and all others similarly situated, | |
| *Plaintiff*, | Case No.: 2:24-cv-02007-JWB-ADM |
| v. | |
| NEW DIRECTION IRA, INC., NEW DIRECTION TRUST COMPANY, and MAINSTAR TRUST, | |
| *Defendants*. | |

## DEFENDANT MAINSTAR TRUST COMPANY'S
## REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

81054272.v5

# **TABLE OF CONTENTS**

**Page**

I. Introduction ................................................................................................................ 1

II. Mainstar's Reply in Support of Defendants' Statement of Uncontroverted Fact ("DSOF") ........................................................................................................... 2

III. Mainstar's Response to Plaintiffs' Statements of Additional Material Facts ("PSAMF") ............................................................................................................... 6

IV. Plaintiffs Have Not Met The Rule 56(D) Standard With Respect To Mainstar .......... 8

V. Plaintiffs' Response Further Establishes That Their Claims Have Nothing to Do with Mainstar ..................................................................................................... 10

VI. Mainstar Did Not Violate Any Duty Regarding Custody ......................................... 14

VII. Conclusion ............................................................................................................... 15

81054272.v5

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abbott v. Chemical Trust*,
  No. 01-2049-JWL 2001 WL 492388 (D. Kan. Apr. 26, 2001).......................................... 13

*Argo v. Blue Cross & Blue Shield of Kan, Inc.*,
  452 F. 3d 1193 (10th Cir. 2006)................................................................................ 7, 11

*Babakr v. Fowles*,
  No. 20-2037-SAC-ADM, 2022 WL 4103850 (D. Kan. Sept. 8, 2022) ............................. 9

*Brandon Steven Motors, LLC v. Landmark Am. Ins. Co.*,
  No. 219CV02659JARGEB, 2020 WL 3412478 (D. Kan. June 22, 2020)......................... 8

*Cerveny v. Aventis, Inc.*,
  855 F.3d 1091 (10th Cir. 2017)....................................................................................... 8

*Crumpley v. Associated Wholesale Grocers, Inc.*,
  No. 16-CV-02298-DDC-GLR, 2017 WL 1364839 (D. Kan. Apr. 13, 2017) ................. 3, 8

*Ellis v. J.R.'s Country Stores, Inc.*,
  779 F.3d 1184 (10th Cir. 2015)..................................................................................... 10

*F.D.I.C. v. Arciero*,
  741 F.3d 1111 (10th Cir. 2013)....................................................................................... 9

*Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*,
  148 F.4th 1202 (10th Cir. 2025).................................................................................... 11

*GeoMetWatch Corp. v. Behunin*,
  38 F.4th 1183 (10th Cir. 2022)...................................................................................... 11

*Gutierrez v. Cobos*,
  841 F.3d 895 (10th Cir. 2016)......................................................................................... 8

*Lewis v. Ft. Collins*,
  903 F.2d 752 (10th Cir. 1990)......................................................................................... 9

*M W., Inc. v. Oak Park Mall, L.L.C.*,
  44 Kan. App. 2d 35 (2010).............................................................................................. 4

*Marten Transp., Ltd. v. Plattform Advert., Inc.*,
  No. 14-2464-JWL, 2016 WL 1718862 (D. Kan. Apr. 29, 2016)....................................... 3

*Newton v. Hornblower, Inc.*,
  224 Kan. 506, 582 P.2d 1136 (1978) ................................................................................ 7

*Nungesser v. Bryant*,
  283 Kan. 550 (2007) ........................................................................................................ 4

*Pohl v. MH Sub I, LLC,*
  332 F.R.D. 713 (N.D. Fla. 2019) ...................................................................................... 3

*Powers v. Tweco Prods.*, Inc.,
  206 F. Supp. 2d 1097 (D. Kan. 2002) ..................................................................... 4, 5, 6

*Powers,*
  206 F. Supp. ..................................................................................................................... 7

*Roadbuilders Mach. Supply Co. v. Sandvik Mining & Constr. USA, LLC,*
  723 F. Supp. 3d 989 (D. Kan. 2024) .............................................................................. 13

*Thompson v. Jiffy Lube Int'l, Inc.*,
  505 F. Supp. 2d 907 (D. Kan. 2007) .............................................................................. 11

*Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.,*
  616 F.3d 1086 (10th Cir. 2010) ........................................................................................ 9

**STATUTES**

26 U.S.C. 408 (a) .................................................................................................................. 14

26 U.S.C. 408 (m)(3) .................................................................................................... 3, 7, 14

26 U.S.C. 408(n) .................................................................................................................. 14

26 U.S.C. 581 ................................................................................................................. 3, 14

K.S.A. 9-2103 ......................................................................................................................... 3

**RULES**

Fed. R. Civ. P. 56 ................................................................................................................... 8

Fed. R. Civ. P. 56(c)(4) .......................................................................................................... 7

Fed. R. Civ. P. 56(d) ........................................................................................... 2, 8, 9, 10, 15

Fed. R. Civ. P. 56(e) .............................................................................................................. 3

Fed. R. Civ. P. 9(b) ........................................................................................................... 6, 11

Fed. R. of Evid. 901(a) .......................................................................................................... 3

## I. Introduction

Defendant Mainstar Trust ("Mainstar") files this separate Reply to highlight the separate and distinct reasons why Mainstar is entitled to summary judgment as a matter of law on all Counts of Plaintiffs' Class Action Complaint. Plaintiffs' Response makes it apparent that Plaintiffs refuse to acknowledge that Mainstar fulfilled a limited role, for a limited time, with respect to Plaintiffs' SDIRA accounts. Plaintiffs had no interactions with Mainstar. They have no facts, nor have they identified any discovery needed to obtain any facts that Mainstar had any involvement beyond its limited role.

Mainstar served as a passive custodian for the SDIRA accounts of Plaintiffs Theriault and Weigel from the inception of the accounts through October 18, 2018, when Mainstar was replaced as Custodian. Mainstar's role was defined by the account documents and in those documents, Plaintiffs directed the purchase of precious metals and directed that they be stored at First State Depository Company, LLC ("FSD").

Plaintiffs are suing Mainstar and the New Directions Defendants to recoup losses that Plaintiffs claim that they incurred due to FSD's wrongful actions. Each and every claim in this lawsuit is precluded by the disclaimers in each Plaintiffs' Buy Direction Letters, in which Plaintiffs specifically agreed that Mainstar (acting as Custodian) would not be responsible for "any activities or lack of activities on the part of said depository." (DSOF[1] ¶¶ 30, 36). Plaintiffs now allege that these waivers should not hold because "Defendants" steered them to FSD, their business partner, lied to Plaintiffs about FSD's qualifications, and thwarted Plaintiffs' attempts to conduct their own investigation into FSD. [Doc. 161 at 1]. None of these allegations have even the slightest hint of evidentiary support with respect to

---

[1] Mainstar's Reply uses the same terminology used in the prior briefing. "DSOF" references Defendants' Statement of Uncontroverted Fact. "PSAMF" refers to Plaintiffs' Statements of Additional Material Facts.

Defendant Mainstar. There is not one fact in the summary judgment record to suggest that Mainstar had any role whatsoever in Plaintiffs' choice of a precious metal depository. Neither of the Plaintiffs mention Mainstar in their supporting Declarations and both of them testified that they have had no dealings with Mainstar. (DSOF ¶¶ 21, 25, 52, 59.)

Plaintiffs offered no evidence to create a genuine issue of material fact as to whether the agreements that they signed – and which they have previously testified to at trial – should not be enforced. Further, with respect to Mainstar, Plaintiffs have not offered sufficient justification as to why they should be allowed additional time to respond to Mainstar's motion under FRCP 56(d).

Mainstar is entitled to summary judgment on all Counts of Plaintiffs' Class Action Complaint.

## II. Mainstar's Reply in Support of Defendants' Statement of Uncontroverted Fact ("DSOF")

Fact Nos. 2, 3, 4, 5, 10,11, 12, 13, 15, 17, 22, 27, 28, 33, 34, 41, 42, 43, 44, 49,54, 57, 58, 59 are uncontroverted by the Plaintiffs. While Plaintiffs respond to the remainder of Defendants' Statement of Uncontroverted Fact, these responses are not sufficient to create a genuine issue of material fact for trial with respect to Plaintiffs' claims against Mainstar. Specifically:

DSOF 1: Plaintiffs reference the "Defendants" collectively, but none of the cited Declarations provide factual support for Plaintiffs' accusations with respect to Mainstar.

DSOF 6. Plaintiffs' argument that the custodian did not act as a "passive trust custodian" is directed only to New Directions, not Mainstar. None of the cited Declarations mention Mainstar.

2

DSOF 7: Uncontroverted as to Mainstar. Plaintiffs identify no representation alleged to have been made by Mainstar or other action taken by Mainstar. None of the referenced Declarations mention Mainstar. Whether Mainstar is registered as a "bank" is irrelevant to disprove the limited contractual role that Mainstar agreed to with respect to Plaintiffs' accounts. Further, Mainstar Trust is chartered with the State of Kansas as a Limited Purpose/ Non-Depository Trust Company. (Ex. 1, Decl. of Bruce Olberding ("Olberding Decl.") Ex. 1-2 Kansas Charter); K.S.A. 9-2103.

DSOF 8, 39: Plaintiffs' read 26 U.S.C. 408 (m)(3) incorrectly and in isolation. Subsection 408(n) defines Bank by reference to 26 U.S.C. § 581 which includes trust companies in the definition of "bank". *See infra* at 14-15. Mainstar Trust is a Limited Purpose/ Non-Depository Trust Company. (Ex. 1, Olberding Decl. ¶ 4); *see also*, K.S.A. 9-2103. Plaintiffs directed and agreed that "physical possession" of their assets would be held by a precious metal depository of their selection for the benefit of the IRA account. (DSOF ¶¶ 29, 30, 31, 32, 35, 36, 37, 38). Further, subsection 408(a) provides that non-bank entities can serve as trustees.

DSOF 9. Uncontroverted as to Mainstar. The document cited[2] should be disregarded as its authenticity has not been stipulated to nor is it authenticated in a manner that meets the requirements of Rule 56(e). *See Crumpley v. Associated Wholesale Grocers, Inc.*, No.

---

[2] Several exhibits attached to the Nehrbass Declaration (1-F, 1-L, 1-Q, 1-R) are screenshots of internet pages, including searches purportedly from the "Wayback Machine." Regardless of whether these documents could ever be admissible, Plaintiffs have made no effort to authenticate these particular documents. *Marten Transp., Ltd. v. Plattform Advert., Inc.,* No. 14-2464-JWL, 2016 WL 1718862, at *2 (D. Kan. Apr. 29, 2016) (admissibility of information from "Wayback Machine" is contingent on proper authentication) *see also Pohl v. MH Sub I, LLC,* 332 F.R.D. 713, 718 (N.D. Fla. 2019) (Discussing authentication of documents from Wayback Machine and discussing that proponent should provide an "affidavit of a person with personal knowledge who can attest that the third-party crawler operates to create an unaltered copy of a website as it appears on a given day" to satisfy the authenticity requirement under Federal Rule of Evidence 901(a).") There are other exhibits attached to Plaintiffs' Response (1-H, 1-I, 1-J, 1-K, 1-M, 1-U) that Plaintiffs have not made any effort to authenticate.

3

81054272.v5

16-CV-02298-DDC-GLR, 2017 WL 1364839, at *6 (D. Kan. Apr. 13, 2017); *Powers v. Tweco Prods.*, Inc., 206 F. Supp. 2d 1097, 1103 (D. Kan. 2002). Plaintiffs offer no evidence to suggest that Mainstar offered advice or was otherwise involved in their depository selection.

DSOF 14: Uncontroverted as to Mainstar. The paragraph and Declarations reference New Directions, not Mainstar. To date, Plaintiffs have not served any discovery on Mainstar that has not been responded to and have not challenged the responses to discovery that Mainstar has served and responded to. (Ex. 2, Bien Decl. ¶ 7-8).

DSOF 16, 18, 19, 23, 24, 30, 31, 36, 37: These facts are uncontroverted as to Mainstar. There is no dispute as to the authenticity and contents of the referenced documents. To date, Plaintiffs have not served any discovery on Mainstar that has not been responded to and have not or challenged the responses to discovery that Mainstar has served and responded to. (Ex. 2, Bien Decl. ¶ 7-8). The referenced plaintiff Declarations do not mention Mainstar and do not support the statement that Plaintiffs' signatures were "procured by fraud," particularly by Mainstar.

DSOF 20: The assertion that Theriault did not receive the letter is not supported by the referenced Declaration. The paragraph and Declaration make no reference to Mainstar.

DSOF 21, 25: Plaintiffs have not offered any facts to suggest that additional contracts exist. The existence of a contract can implicate both questions of fact and of law but where undisputed facts establish a contract's existence and terms this is question of law for the Court.[3] Plaintiffs do not controvert their own deposition testimony that they did not enter into

---

[3] *M W., Inc. v. Oak Park Mall, L.L.C.*, 44 Kan. App. 2d 35, 46 (2010) ("When the evidence pertaining to the existence of a contract or the content of the contract's terms is conflicting or permits more than one inference, a question of fact is presented. Nevertheless, whether undisputed facts establish the existence and terms of a contract raise a question of law for the court's determination.") (citing *Nungesser v. Bryant*, 283 Kan. 550, 566 (2007)).

5

any additional agreements. Further, Plaintiffs have served no additional discovery to Mainstar (Ex. 2, Bien Decl. ¶ 8) and have not identified any discovery needed from Mainstar to create a genuine issue of fact.

DSOF 26: Uncontroverted as to Mainstar. Plaintiffs' arguments and the referenced Declarations speak only to New Directions, not Mainstar. Plaintiffs have not served any discovery to Mainstar that has not been responded to and have not identified any discovery needed from Mainstar.

DSOF 29, 32, 35, 38, 40, 47, 53: Uncontroverted as to Mainstar. Although Plaintiffs use the term "Defendants," the referenced Declaration does not identify any action taken by Mainstar. Plaintiffs do not offer any evidence that Mainstar was involved or offered any advice regarding depository selection.

DSOF 45: Plaintiffs offer no evidence to suggest that Mainstar knew or should have known about Higgins' misdeeds. The referenced Declaration by attorney Nehrbass does not support this allegation. Further, Nehrbass lacks personal knowledge to testify to these facts. *See Powers,* 206 F.Supp.2d at 1103 (conclusory statements or statements not based on personal knowledge offered in response to summary judgment should be disregarded).

DSOF 46: Plaintiffs did not controvert this statement. The referenced Declarations make no reference to acts by Mainstar.

DSOF 48: Plaintiffs have not offered any evidence to contradict their sworn testimony that they had no other dealings with Mainstar. *See* (DSOF ¶¶ 21, 25, 52, 59). Plaintiffs have not identified any agreements that Mainstar has allegedly failed to produce. Since the summary trial, no additional discovery has been directed to Mainstar. (Ex. 2, Bien Decl. ¶¶

6

7-8). Finally, Attorney Nehrbass lacks personal knowledge to testify as to the existence of documents or agreements. *See Powers,* 206 F.Supp.2d at 1103.

DSOF 50, 51, 52: Uncontroverted as to Mainstar. Attorney Nehrbass lacks personal knowledge to controvert the sworn testimony of his clients. Further, Plaintiffs offer no evidence to suggest that Mainstar offered any advice regarding depository selection or regarding communications between Plaintiffs and Mainstar.

DSOF 55, 56: Uncontroverted as to Mainstar. Again, Plaintiffs offer no evidence to suggest that Mainstar was involved whatsoever in Plaintiffs' depository selection. Plaintiffs have not identified[4] any supposed fraud or misrepresentation committed by Mainstar. The referenced Declaration makes no allegation as to Mainstar. Weigel also testified at trial that they selected FSD himself. (DSOF ¶¶ 57, 58 (both uncontroverted)).

### III.    Mainstar's Response to Plaintiffs' Statements of Additional Material Facts ("PSAMF")

PSAMF 1, 2, 3: Unsupported with respect to Mainstar. Plaintiffs have not served any discovery on Mainstar that has not been responded to. (Ex. 2, Bien Decl. ¶ 8). Plaintiffs have not raised any issues with the sufficiency of Mainstar's Rule 26 disclosures or prior discovery responses. (Ex. Bien Decl. ¶ 7); [Doc. 161-2, Nehrbass Decl.].

PSAMF 4, 5, 6: Unsupported with respect to Mainstar. While Plaintiffs lump the "Defendants" together, the cited Declarations discuss New Directions and not Mainstar. Plaintiffs offer no evidence, nor do they allege that Mainstar made any statements, representations, or had any involvement with Plaintiffs' selection of FSD. Each Plaintiff testified that they had not had dealings with Mainstar. (DSOF ¶¶ 21, 25, 52, 59).

---

[4] Plaintiffs were required in their initial Complaint to identify with particularity the circumstances of any alleged fraud. FRCP 9(b).

PSAMF 7. These allegations do not address Mainstar. Mainstar no longer served as Custodian for Plaintiffs' accounts after October 18, 2018. [Doc. 115 at 3]; (DSOF ¶¶ 12, 13).

PSAMF 8, 9, 10, 11, 12, 13. Denied as unsupported as to Mainstar. While Plaintiffs lump the "Defendants" together, the cited Declarations do not mention Mainstar. Plaintiffs offer no evidence to suggest that Mainstar had any business relationship with FSD. Further, Attorney Nehrbass lacks personal knowledge to testify to the facts alleged in paragraph 11 and the authenticity of the referenced exhibits (1-F, 1-H, 1-G) has not been stipulated to or presented in a manner to comply with Rule 56 (e). *See Powers,* 206 F. Supp. at 1103.

PSAMF 14, 15: Plaintiffs' reading of 26 U.S.C. 408 (m)(3) is incorrect. The provision requires that "physical possession" must be maintained by a Trustee, defined by subsection 408 (a). Subsection 408 provides that non-bank entities can serve as trustees. See infra at 14-15. Plaintiffs agreed that "physical possession" of their assets would be held by a precious metal depository of their selection. (DSOF ¶¶ 29, 30, 31, 32, 35, 36, 37, 38).

PSAMF 16: Controverted as to Mainstar. The referenced paragraph in the Declaration does not support this statement. Further, attorney Nehrbass lacks personal knowledge to testify to the alleged facts. Fed. R. Civ. P. 56(c)(4); *Argo v. Blue Cross & Blue Shield of Kan, Inc.,* 452 F. 3d 1193, 1200 (10th Cir. 2006) (An affidavit is inadmissible if "the witness could not have actually perceived or observed that which he testifies to.") The term "close relationship" is undefined and holds no legal or factual significance.[5]

---

[5] The fact that employees of Mainstar and/or its parent corporation may have sat on a board of directors holds no relevance without other correlating evidence, of which Plaintiffs have none. Under Kansas law, knowledge of wrongful activities cannot be imputed to board members absent evidence that, in exercising reasonable care in attending their responsibilities, the board member should have been aware of circumstances requiring corrective action. *Newton v. Hornblower, Inc.*, 224 Kan. 506, 515–16, 582 P.2d 1136, 1144 (1978). Imputing such knowledge to Midwest Trust, a separate legal entity, and then to Mainstar is a further leap. Plaintiffs have no evidence to support their inference that alleged knowledge of wrongdoing should be imputed from NDTC board members, to Mainstar's parent company, and then to Mainstar.

PSAMF 17: Controverted as to Mainstar. First, the referenced document (Ex. 1-U) has not been properly authenticated and should be disregarded. *See Crumpley,* 2017 WL 1364839 at *6. The allegations as to Mainstar are speculative and wholly unsupported.

PSAMF 18, 19, 20, 21, 22: Controverted as to Mainstar. These paragraphs and the referenced declaration do not discuss Mainstar. Further, Dr. Theriault has testified that he did not have any dealings with Mainstar. (DSOF ¶¶ 21, 52).

PSAMF 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34: Controverted as to Mainstar. These paragraphs and the referenced exhibits do not discuss Mainstar. Mr. Weigel testified that he did not have any dealings with Mainstar. (DSOF ¶¶ 25, 59). Mainstar was replaced as Custodian on October 18, 2018. (DSOF ¶¶ 12, 13).

## IV.  Plaintiffs Have Not Met The Rule 56(D) Standard With Respect To Mainstar

Under Rule 56(d), a nonmoving party may request that a Court defer ruling as to a motion for summary judgment to allow the nonmoving party the opportunity to gather a more complete record before responding to the motion. The Tenth Circuit requires a party seeking such relief to show, by affidavit: "(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [him] to obtain those facts and rebut the motion for summary judgment." *Gutierrez v. Cobos*, 841 F.3d 895, 908 (10th Cir. 2016); *Brandon Steven Motors, LLC v. Landmark Am. Ins. Co.*, No. 219CV02659JARGEB, 2020 WL 3412478, at *2 (D. Kan. June 22, 2020). "A party may not invoke Rule 56[d] 'by simply stating that discovery is incomplete but must state with specificity how the additional material will rebut the summary judgment motion.'" *Brandon Steven Motors,* 2020 WL 3412478, at *2.

While Rule 56(d) motions are normally treated liberally, relief is not automatic. *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017). Rule 56(d) "is not a license

8

for a fishing expedition." *Lewis v. Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990); *Babakr* v. Fowles, No. 20-2037-SAC-ADM, 2022 WL 4103850, at *2 (D. Kan. Sept. 8, 2022). Speculation alone will not support a Rule 56(d) motion. *F.D.I.C. v. Arciero*, 741 F.3d 1111, 1116 (10th Cir. 2013); *Babakr*, 2022 WL 4103850 at *2.

The burden of the non-moving party is to demonstrate a genuine issue of material fact and, in submitting their Rule 56(d) request, Plaintiffs must show how additional discovery would produce probable and essential facts to prevent summary judgment. *Id.* at *5. "It is not enough for the plaintiff to assert areas of factual inquiry without explaining what specific probable facts will come from this discovery and how such material facts are essential to rebut the defendant's summary judgment motion." *Babakr*, at *5.

Plaintiffs have not demonstrated any factual discovery it needs from Mainstar and how that discovery will impact the pending motion for summary judgment. Only one paragraph[6] the Nehrbass 25-page Declaration [Doc. 161-2] mentions Mainstar. But the Declaration fails to identify any additional information that Plaintiffs seek or efforts Plaintiffs have undertaken to obtain the information. *See Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.,* 616 F.3d 1086, 1096 (10th Cir. 2010) (upholding denial of Rule 56(d) request where supporting affidavit did not contain sufficient information). Most importantly, Plaintiffs have not explained (nor can they) how this alleged "close relationship" between New Directions and Mainstar has any bearing on Mainstar's pending motion. Rule 56(d) motions should be "robust" and the lack of the necessary specificity is cause for denying Plaintiffs'

---

[6] The Declaration states, "Plaintiffs believe there is a close and integral relationship between Mainstar Trust and New Direction. Four out of five of the NDTCO board members were officers at Midwest Trust, the parent company of Mainstar Trust, and Plaintiffs believe they shared the same office. Plaintiffs intend to take discovery of and depose current and former members of New Direction's board of directors to prove the interconnected relationship between the companies." [Doc. 161-2 Nehrbass Decl. ¶ 67].

9

81054272.v5

motion. *See Ellis v. J.R.'s Country Stores, Inc.,* 779 F.3d 1184, 1206 (10th Cir. 2015). Plaintiffs offer only speculation, which is insufficient to grant them relief under Rule 56(d). The request as to Mainstar should be denied.

**V.     Plaintiffs' Response Further Establishes That Their Claims Have Nothing to Do with Mainstar**

Defendants' Motion for Summary Judgment is based on Plaintiffs' signatures as parties to a series of agreements in which they accepted and acknowledged that they alone were responsible for their investment decisions and that the role of the Defendants, including Mainstar, was strictly limited to executing Plaintiffs' instructions, including their selection of FSD as the Depository to store their precious metals. [Doc. 140].

Plaintiffs attempt to redefine their case in order to avoid their signed, clear, and expansive waivers and directions. Plaintiffs' response states that Plaintiffs' "case arises out of Defendants' recommending and directing their customers to use FSD services, lying about it, and attempting to cover up the systematic fraud at FSD for their own benefit." [Doc. 161, Pls. Resp. to DSOF 1]. Responding to each of the many documents they signed, each plaintiff states that "[Plaintiff] is not alleging that Defendants provided him investment advice regarding whether to invest in precious metals or the soundness of his investment decisions; he is claiming that Defendants chose to identify FSD as a suitable and appropriate depository for those precious metals without disclosing Defendants' relationship with FSD and other material information." [Doc. 161, Pls.' Resp. to DSOF 16, 20, 23, 24, 30, 31].

While these may be Plaintiffs' allegations, none of them apply to Mainstar. There is no allegation, and *certainly no evidence*, that Mainstar recommended FSD to Plaintiffs as a depository, that Mainstar had any relationship with FSD, or that Mainstar lied or held any material information pertaining to FSD. The Declarations and evidence offered in Plaintiffs'

10

81054272.v5

response discuss the actions of New Directions and not Mainstar. Both named Plaintiffs have testified that they had no contact with Mainstar. (DSOF ¶¶ 21, 25, 52, 59).

Plaintiffs claim that "additional discovery *may uncover* that Mainstar was involved in fraud. [Doc. 161 at 40]. They go on to state that "Plaintiffs aver that individuals associated with Defendants made statements regarding the reputability, suitability, safeness, and appropriateness of FSD, but Plaintiffs are not privy to inside information regarding whether any individual on the Precious Metals team acted as agents of Mainstar when making representations to Plaintiffs." *Id.* Plaintiffs' own words demonstrate that the claims against Mainstar are based solely on speculation, which is not sufficient to sustain their claim. A party cannot defeat summary judgment relying on mere speculation, conjecture, or surmise. *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1201 (10th Cir. 2022). "[S]tatements of mere belief" hold no weight at the summary judgment stage. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006).

The federal rules do not permit plaintiffs to sustain litigation in mere hope that they may uncover a fraud claim. At the initial pleading stage, the federal rules require that a party state with particularity the circumstances constituting fraud or mistake, which includes the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof. *See* Fed. R. Civ. P. 9(b); *Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 148 F.4th 1202, 1210 (10th Cir. 2025). Further, when addressing claims of fraud against multiple defendants, Plaintiffs are obligated to separately identify the acts that they allege that each has taken in furtherance of the claimed fraud. *See Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 933 (D. Kan. 2007). Here, nearly two years after Plaintiffs filed this lawsuit, Plaintiffs have

11

not identified (nor can they) *any* false representation or omission made by Mainstar, let alone can they describe the circumstances of any representation. Plaintiffs lack any evidence to create a genuine issue of material fact to suggest that Mainstar had any involvement in the wrongdoing that Plaintiffs allege.[7]

Plaintiffs can point to no act, representation, or wrongdoing by Mainstar that would negate the clear waivers as to Mainstar's liability to which Plaintiffs agreed when they opened their self-directed IRA accounts. These agreements explicitly define and limit the duties of the Defendants and allocated all risks of the transaction to Plaintiffs. Amongst the numerous waivers of liability that Plaintiffs agreed to when they opened their self-directed accounts, Plaintiffs each issued a Precious Metals Buy Direction Letter, which specifically released the Custodian (then Mainstar) and the Administrator from any responsibility for activities on the part of the depository:

> "There are numerous depositories that specialize in storage and safekeeping of precious metals. I understand that the Custodian and the Administrator are not and cannot be held responsible for the actions of these depositories and I hereby release and hold harmless Custodian from any damages that I may incur with respect to my choice of depository *and any activities or lack of activities on the part of said depository."* (DSOF ¶¶ 30, 36).

Further, each of the plaintiffs also acknowledged that they, not Defendants and certainly not Mainstar, selected FSD as the depository. (DSOF ¶¶ 29, 32, 35, 38).

Plaintiffs filed suit to recover losses they allege to have incurred due to the acknowledged wrongdoing of the depository, FSD. Their claim falls squarely within the waiver that each Plaintiff agreed to in their Buy Direction Letter. (DSOF ¶¶ 30, 36). Just as in *Abbott v. Chemical Trust,* the Court should enforce these waivers and dismiss Plaintiffs'

---

[7] In Plaintiffs' Response they state that additional discovery is needed to determine Mainstar's involvement in the communications with Plaintiffs regarding FSD. [Doc 161 at 40]. Plaintiffs' response fails to mention that Plaintiffs have served no discovery to Mainstar on these issues. *See id.*

claims. No. 01-2049-JWL, 2001 WL 492388, at *8 (D. Kan. Apr. 26, 2001), Plaintiffs try to distinguish *Abbott,* arguing that the waivers in that case involved the choice of any particular asset while here, Plaintiffs' claims are based on the choice of a depository. [Doc. 161 at 35]. This is a distinction without a difference and the *Abbott* decision was not that limited. Judge Lungstrum dismissed the plaintiffs' claims based on the express language of the waivers that the Plaintiffs signed. 2001 WL 492388 at *7-9. Here, Plaintiffs each executed waivers that preclude any claim related to the action or inaction of the selected Depository. (DSOF ¶¶ 30, 36). Similar to *Abbott*, there is no evidence that Mainstar evaluated, recommended, or was involved in Plaintiffs' selection of FSD as a depository. *See* (DSOF ¶¶ 30, 36); *Abbott* at *8 ("there is no evidence that plaintiffs actually believed that FNB would review or evaluate the Chemical Trust asset for purposes of assessing the soundness of plaintiffs' investment decision. In such circumstances, the law is clear that FNB's fiduciary duty to plaintiffs-to the extent such a duty exists-is limited to carrying out the transactions requested by plaintiffs.")

Plaintiffs attempt to controvert their prior admissions[8] that they agreed to the terms of the Buy Direction Letters. As discussed above, their argument that they should not be held to the terms of the letters is premised on their claims that "Defendants" made fraudulent representations and withheld material information regarding FSD is unavailing. [Doc. 161, Resp. to DSOF 30, 36]. As discussed above, these allegations are wholly unsupported as to Mainstar. Plaintiffs offer no reason why their express release is not effective as to Mainstar, who they admit they had no dealings with. (DSOF ¶¶ 21, 25, 52, 59).

---

[8] Counsel's declaration is inadequate to recant Plaintiffs' admissions under oath and should be disregarded. *See Roadbuilders Mach. Supply Co. v. Sandvik Mining & Constr. USA, LLC,* 723 F. Supp. 3d 989, 995 (D. Kan. 2024) (the Court may disregard contradictory testimony if it creates a sham fact issue.).

13

**VI.     Mainstar Did Not Violate Any Duty Regarding Custody**

Throughout their response, Plaintiffs allege that Defendants, including Mainstar, violated their duties because they failed to keep physical possession of the Plaintiffs' precious metals. [Doc. 161 at 37]. Plaintiffs cite to 26 U.S.C. 408(m)(3) in support of the proposition that the precious metals they purchased were required to remain "in the physical custody of a trustee." *Id*. Plaintiffs imply, incorrectly, that Defendants breached this requirement and a duty to Plaintiffs because they did not maintain physical possession of Plaintiffs' assets.

First, Plaintiffs cite only a portion of the controlling code and misinterpret the law governing these accounts. The referenced subsection 408(m)(3) provides an exception to the general rule that "collectables" may not be held by self-directed IRA accounts and provides that physical gold, silver, platinum and palladium may be held in the accounts but requires that the asset be physical possession of a "trustee", as described in subsection 408 (a). 26 U.S.C. 408 (a) defines a "trustee" to be a bank "or such other person who demonstrates to the satisfaction of the Secretary that the manner in which such other person will administer the trust will be consistent with the requirements of this section." Mainstar is an Office of State Banking Commission chartered Trust company and therefore meets the definition of Bank at 26 U.S.C. 408(n) which refers to 26 U.S.C. 581 where a "bank" includes a trust company such as Mainstar.  Plaintiffs ignore the fact that they each directed that their precious metal assets stored at a non-bank, non-trust company depository in this case FSD.

Plaintiffs expressly agreed to an arrangement that meets the requirements of 25 U.S.C. 408. Plaintiffs agreed that the assets that they purchased would be held with a depository that specialized in the storage and safekeeping of precious metals. (DSOF ¶¶ 30, 36). Plaintiffs agree that they each selected FSD to serve as this depository. (DSOF ¶¶

32, 38). Thus, Plaintiffs explicitly agreed that Mainstar would not hold "physical custody" of their assets.

The Agreements between Mainstar and the Plaintiffs set forth the parties duties and responsibilities. In these agreements, Plaintiffs expressly agreed that Mainstar would act as a passive custodian obligated only to execute Plaintiffs' directions and that Mainstar did not agree to take on any fiduciary responsibilities with respect to the SDIRA accounts. (DSOF ¶¶ 18, 23, 30, 36). The record on summary judgment demonstrates that this is precisely what Mainstar did.

## VII. Conclusion

Plaintiffs have not raised a genuine issue of material fact as to why their agreement to absolve Mainstar for any responsibility for the acts of their selected depository should not be upheld. This waiver is dispositive of all of Plaintiffs' claims. Further, Plaintiffs have not established a Fed. R. Civ. P. 56(d) basis to defeat this dispositive motion or defer decision on this motion for Summary Judgment. Accordingly, Mainstar is entitled to summary judgment as a matter of law.

Dated: October 10, 2025

LATHROP GPM LLP

By: /s/ *Richard N. Bien*
    Richard N. Bien (D. Kan. 70101)
    Brian C. Fries (KS # 15889)
    Carrie E. Josserand (KS # 18893)
    2345 Grand Boulevard, Suite 2200
    Kansas City, Missouri 64108-2618
    Telephone: (816) 292-2000
    Telecopier: (816) 292-2001
    richard.bien@lathropgpm.com
    brian.fries@lathropgpm.com

ATTORNEYS FOR DEFENDANT
*Mainstar Trust*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 10th day of October, 2025, a true and correct copy of the above and foregoing was e-filed with the Court's CM/ECF electronic filing system, which provided notice to all parties who have entered an appearance in this action.

/s/ *Richard N. Bien*
An Attorney for Defendant
*Mainstar Trust*