**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| JOSEPH THERIAULT and WILLIAM WEIGEL, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEW DIRECTION IRA, INC., NEW DIRECTION TRUST COMPANY, and MAINSTAR TRUST,<br><br>Defendants. | **CONSOLIDATED CASES**<br><br>Case No. 23-2477-JWB-ADM |
| CHRISTY WALLACE, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEW DIRECTION IRA, INC., NEW DIRECTION TRUST COMPANY, and MAINSTAR TRUST,<br><br>Defendants. | Case No. 24-2007-JWB-ADM |

**MEMORANDUM AND ORDER**

On July 9, 2025, the court consolidated the above-captioned cases, both putative class actions, for discovery and pretrial case-management purposes. (ECF 137.) The cases are now before the court on plaintiffs' motion to compel New Direction IRA, Inc. and New Direction Trust Company (together, "New Direction") to produce documents being withheld under the attorney-client privilege and/or the work-product doctrine. (ECF 232.) The court has reviewed the

documents *in camera.* For the reasons discussed below, the motion is granted in part and denied in part.

## I. BACKGROUND

New Direction provides account-administration and custodian services for self-directed individual retirement accounts ("IRAs"). It offers its clients both traditional and Roth IRAs, each of which gives account holders a tax-privileged way to hold alternative assets, such as real estate and precious metals. New Direction does not secure any assets of its account holders; rather, its business comprises keeping records, preparing mandatory IRS reports, and passively holding title to the account holder's assets.

Plaintiffs are account holders of self-directed IRAs that New Direction administered. (ECF 115, at 5.) Each plaintiff chose to open a self-directed account for the purpose of investing in gold and other precious metals. As part of the account-creation process with New Direction, each plaintiff submitted a form directing that the precious metals purchased in their accounts be stored at First State Depository ("FSD"), an institution that, according to plaintiffs, New Direction recommended as a place to hold precious metals.

In 2019, the Commodity Futures Trading Commission ("CFTC") began investigating FSD and its owner, Robert Higgins. On June 26, 2020, the CFTC served a subpoena on New Direction, asking for information about FSD. The subpoena "suggested that the CFTC was investigating a 'silver leasing' program organized among" FSD, Argent Asset Group ("Argent"), and/or West Hills Capital. (ECF 247-1.) On June 30, 2020, New Direction retained outside counsel to represent it in issues pertaining to FSD. New Direction's in-house counsel, Travis Brown, worked with outside counsel on legal matters arising from the CFTC lawsuit and subsequent civil litigation filed in this court. The CFTC deposed a New Direction executive in December 2020 and again in March

2021 as part of its investigation of FSD. In September 2022, the CFTC filed a lawsuit against FSD and Higgins in the U.S. District Court for the District of Delaware, alleging that FSD and Higgins had stolen more than $110 million of the precious metals deposited at FSD. *CFTC v. First State Depository Company,* LLC, Case No. 1:22-cv-01266-RGA (D. Del.). A large amount of the stolen assets included precious metals from self-directed IRA accounts, including the New Direction accounts of each plaintiff. The Delaware court appointed Kelly Crawford and Peter Lewis as Receiver ("Receiver") to stand in FSD's shoes and assess its assets.

On March 3, 2023, plaintiff Joseph Theriault filed suit against FSD and New Direction Trust Company based on the same factual underpinnings as in the current litigation. *Theriault v. New Direction Trust Co.*, Case No. 23-2091 (D. Kan.). Theriault voluntarily dismissed his case in May 2023. In late 2023 and early 2024, plaintiffs filed the above-captioned cases against New Direction and Mainstar Trust as administrator and custodian of the IRAs. Both cases allege that defendants committed fraud, were negligent, breached fiduciary duties, and violated various state consumer-protection laws by, among other things, making inaccurate representations about the security and reputation of FSD. FSD is not a party in the present cases.

Discovery proceeded in these consolidated cases. In response to written discovery, New Direction withheld certain documents—in whole or in part—based on the attorney-client privilege and/or the work-product doctrine. New Direction produced a privilege log of the same. Plaintiffs now move the court to deem New Direction's privilege log insufficient and to overrule New Direction's attorney-client privilege and/or work-product protection objections to producing more

than 400 documents. Plaintiffs divide the documents into four categories,[1] and have color-coded the privilege log to identify documents falling into each category:

- Green: emails sent between January 19 and March 30, 2023, between Brown and the Receiver that New Direction has redacted based on work-product.
- Orange: emails between New Direction employees (without an attorney copied) that New Direction has withheld based on work-product.
- Yellow: emails from New Direction employees to Brown that include attachments. New Direction has withheld these based on attorney-client privilege and work product.
- Blue: emails from New Direction employees to Brown without attachments that New Direction has withheld based on attorney-client privilege and/or work product.

As directed by the court, New Direction submitted, with its response to the motion, the withheld documents for the court to review *in camera*. As explained below, after applying the relevant legal standards, the court concludes that New Direction incorrectly designated 33 documents as privileged and/or work product. New Direction must produce these documents and/or re-produce them without redactions, as explained below.

## II. ADEQUACY OF NEW DIRECTION'S PRIVILEGE LOG

Plaintiffs' initial argument is that New Direction's privilege log is deficient under Federal Rule of Civil Procedure 26(b)(5) because it does not describe the withheld documents in a manner that allows plaintiffs to assess the privilege claim. Rule 26(b)(5)(A)(ii) requires:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must . . . describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

[1] Plaintiffs' opening brief also identified a fifth category of documents highlighted in red, but the parties have since resolved their disputes over that category. (ECF 247, at 2 n.1.)

The rule does not require the withholding party to set forth the description in a particular format, but parties generally satisfy its tenets by providing a privilege log. *See In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2017 WL 1106257, at *4 (D. Kan. Mar. 24, 2017) ("Although Fed. R. Civ. P. 26(b)(5)(A) doesn't expressly require a privilege log, a party withholding information on privilege grounds generally satisfies the tenets of that rule by providing a privilege log."); *Farha v. Idbeis,* No. 09-1059-JTM, 2010 WL 3168146, at *4 (D. Kan. Aug. 10, 2010) ("Typically, parties satisfy Rule 26(b)(5)(A)(ii) by creating a privilege log describing the date the document was created, the author and recipient, the general reason the communication relates to legal advice or work product and the specific privilege claimed."). On occasion, "a party might satisfy Rule 26(b)(5)(A)(ii) by describ[ing] a particular communication in such narrative detail that a formal privilege log is unnecessary." *Farha*, 2010 WL 3168146, at *4 n.11. Regardless of the format chosen, the withholding party bears the burden of describing the documents in sufficient detail "so that the opposing party and the court can evaluate the claimed privilege." *In re Syngenta*, 2017 WL 1106257, at *5; *see also Farha*, 2010 WL 3168146, at *4 n.11 ("A privilege log is not always necessary as long as the opposing party and the court can assess whether the claimed privilege applies to the document."). The level of detail required is determined on a case-by-case basis. *See Kosjer v. Coffeyville Res. Crude Transp., LLC*, No. 17-1181-JTM, 2018 WL 1151515, at *3 (D. Kan. Mar. 5, 2018). "If a party fails to make the required showing . . . the court may deem the privilege waived." *Couser v. Somers*, No. 18-1221-JWB-GEB, 2022 WL 343659, at *6 (D. Kan. Feb. 4, 2022) (quoting *In re Universal Serv. Fund Tel. Billing Practices Litig*., 232 F.R.D. 669, 671 (D. Kan. 2005)); *Fish v. Kobach*, No. 15-9300-JAR-JPO, 2016 WL 893787, at *2 (D. Kan. Mar. 8, 2016) (citing *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 448 (D. Kan. 2009)).

In this case, New Direction produced a typical privilege log in chart format. (ECF 233-1.) It includes columns for New Direction to identify (1) the date the document was created, (2) the author, (3) the recipient(s), (4) the person(s) copied, (5) the type of document by file name and type (e.g., email message, Microsoft Teams message, .pdf, Word document), (6) the specific privilege claimed, and (7) a description of the document, in which New Direction describes the general reason the communication relates to legal advice or work product. (*Id.*) On its face, the privilege log is the type that courts in this district have found satisfactory. *See, e.g., Farha*, 2010 WL 3168146, at *4 ("Typically, parties satisfy Rule 26(b)(5)(A)(ii) by creating a privilege log describing the date the document was created, the author and recipient, the general reason the communication relates to legal advice or work product and the specific privilege claimed."). Plaintiffs do not identify specific log entries that they deem deficient. Rather, they broadly state, "New Direction's privilege log is chock full of documents for which no author, nature, purpose or subject matter of the document is identified or apparent from the log." (ECF 241, at 5.) This sweeping argument is not specific enough for the court to rule a particular log entry deficient.

The court turns, then, to plaintiffs' categorical challenge to the privilege log. Plaintiffs assert that "[w]here documents consist of employee-gathered factual reports provided to counsel during a subpoena response, the log must articulate why these reports were created for the purpose of obtaining legal advice rather than for compliance with the subpoena or other business purposes." (ECF 241, at 5-6.) Plaintiffs further assert that "[w]here documents were prepared in response to a subpoena in litigation where the company was not a party, the log must explain how this satisfies the anticipation requirement." (*Id.* at 6.) Plaintiffs provide no legal support for the assertions that the log must be so detailed and specific, and the court's research has revealed none.

Plaintiffs appear mainly to be challenging the yellow-highlighted log entries,[2] so the court will use those as an example (though a similar analysis would apply to all the highlighted entries). These entries indicate that the documents being withheld based on both attorney-client privilege and work-product are Teams messages attaching spreadsheets labeled "FSDC Holdings as of [various dates]" and "FSDC Clients." The log description states that they are confidential communications with counsel "in connection with the provision of legal services and/or advice . . . related to the CFTC subpoena" and also that they reflect the mental impression or strategy of counsel "in anticipation of litigation." Thus, the log describes the withheld documents and states that they are related to the CFTC subpoena to New Direction. In the context of this lawsuit, the entries clearly are referring to the CFTC subpoena related to FSD. And in case there was any doubt, New Direction submitted Brown's sworn declaration with its response, further describing the withheld documents and the purpose of why they were created and provided to counsel, i.e., to help counsel evaluate litigation risks and regulatory exposure related to New Direction's accountholders' assets stored at FSD and its related entities. (ECF 247-1, at 6.) The court finds these log entries are adequate to enable plaintiffs to "assess the [privilege] claim." FED. R. CIV. P. 26(b)(5)(A)(ii). Whether or not the documents are appropriately claimed as privileged is a separate question from whether New Direction adequately described them on its log and supplemental declaration. The court finds the log sufficient and addresses plaintiffs' substantive challenges to New Direction's privilege objections below.

---

[2] Plaintiffs have described the yellow-highlighted entries as "Emails from New Direction employees to Mr. Brown that appear to be attaching spreadsheets or other reports of non-privileged facts that have been generated, gathered or assembled from New Direction's systems or files." (ECF 241, at 2.)

## III. EMAILS BETWEEN NEW DIRECTION COUNSEL AND THE FSD RECEIVER WITHHELD AS WORK PRODUCT (GREEN CATEGORY)

New Direction has redacted information in an email string exchanged between Brown and the Receiver in January 2023 (various versions of the email string account for three privilege-log entries) and in an email string between Brown and the Receiver in March 2023 (various versions of the email string account for four privilege-log entries). New Direction asserts that the redacted portions are subject to work-product protection because they reflect Brown's mental impressions and legal theories. Below, the court finds all of these documents appropriately redacted and denies plaintiffs' motion as to the green category of documents.

**Legal Standards: Work-Product Protection**

Federal law governs application of the work-product doctrine in federal court. *See Frontier Ref. Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). First recognized in *Hickman v. Taylor*, it is a practical doctrine grounded in the realities of litigation in an adversary system. 329 U.S. 495, 509-11 (1947). The Supreme Court stated that when a lawyer performs his or her various duties, "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id.* at 510. The doctrine was subsequently incorporated into Federal Rule of Civil Procedure 26(b)(3). Rule 26(b)(3) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3).

The party asserting work-product protection bears the burden to demonstrate that it applies. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1185 (10th Cir. 2010); *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984). The party must show that the materials sought (1) are documents or tangible things; (2) were prepared in anticipation of litigation or for trial; and (3) were prepared by or for a party or a representative of that party. FED. R. CIV. P. 26(b)(3); 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2024 (3d ed. 2019). Under the third element, "it is well-established that the work product doctrine protects not only documents created by counsel, but may also protect documents created at the direction of counsel." *Deffenbaugh Indus., Inc. v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan.*, No. 20-2204-JTM-KGG, 2021 WL 1612099, at *5 (D. Kan. Apr. 26, 2021) (emphasis in original) (citing *Williams v. Sprint/United Mgmt. Co.,* No. 03-2200-JWL-DJW, 2006 WL 2850659 (D. Kan. Oct. 5, 2006)).

**The Emails are Protected by the Work-Product Doctrine**

Applying the above standards, the court finds the redacted emails are the protected work product of New Direction's attorney, Brown.

The January 2023 email strings contain two messages that New Direction redacted. The first is a January 19 email from Brown to the Receiver that reflects Brown's mental process about how a document FSD filed in the Delaware litigation might have a legal impact on New Direction. The email is clearly a document prepared by New Direction's attorney (i.e., its representative), thereby meeting the first and third elements of the privilege.

The court also finds Brown prepared the email in anticipation of litigation being brought against New Direction. Under this second element, courts consider whether there was a "real and substantial probability that litigation will occur at the time the documents were created."

*Kannaday v. Ball*, 292 F.R.D. 640, 648 (D. Kan. 2013). "In addition, courts look 'to the primary motivating purpose behind the creation of the document to determine whether it constitutes work product. Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work-product doctrine.'" *Id.* at 649 (quoting *Marten v. Yellow Freight Sys., Inc.*, No. 96-2013-GTV, 1998 WL 13244, at *10 (D. Kan. Jan. 6, 1998)). On the date Brown sent the email in 2023, the CFTC already had filed suit against FSD, a precious-metals depository with whom New Direction worked closely and referred clients to, regarding FSD's handling of precious metals. Though not conceding fault, it was reasonable for New Direction to anticipate that related litigation could be brought against it. Indeed, shortly after the CFTC began investigating FSD in 2019, New Direction retained outside counsel and the CFTC deposed a New Direction executive in December 2020 and again in March 2021. The court's *in camera* review of the email indicates that it was not created in the ordinary course of business, but in anticipation of protecting New Direction's position in litigation that New Direction reasonably anticipated was imminent. The court upholds the work-product objection as to Brown's January 19 email.

The second redacted message in the January 2023 email string was from the Receiver to Brown, dated January 23. It reported what action the Receiver took in response to Brown's January 19 email, and thereby reflected Brown's legal position. For the same reason, then, the court finds it protected work product.[3]

---

[3] In reaching this decision, the court has considered the portion of plaintiffs' reply brief setting out communications between plaintiffs' counsel and the Receiver's counsel (ECF 249, at 4), but is not persuaded by the accompanying argument. Thus, New Direction's motion for leave to file a surreply to address that portion of the reply brief (ECF 256) is denied as moot.

.

The court now turns to the email string between Brown and the Receiver in March 2023. In that string, New Direction redacted a portion of a March 21 email from Brown to the Receiver, summarizing their discussion earlier in the day. After reviewing the unredacted document *in camera*, the court upholds New Direction's work-product objection. The redacted portion of the email reflects Brown's legal strategy in the *Theriault v. New Direction Trust Co.* litigation that Theriault had recently filed against New Direction and FSD. Thus, all three elements of the work-product doctrine are present.

**No Waiver of Work-Product Protection**

Plaintiffs next argue that any work-product protection that otherwise attached to the emails between Brown to the Receiver "was waived when Mr. Brown chose to send the communication to the Receiver, with no reasonable expectation that the Receiver would not share that communication with the CFTC or with victims" and "then waived a second time when New Direction's own counsel bargained with the FSD Receiver to make the FSD Receiver's materials available to all counsel in the Kansas litigation." (ECF 241, at 7.) Plaintiffs bear the burden to establish that a waiver of work-product protection occurred. *See Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 379 & n.10 (5th Cir. 2010); *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2017 WL 2555834, at *3 n.28 (D. Kan. June 13, 2017); *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000) (noting that, in contrast to the attorney-client privilege, "a party asserting work-product immunity is not required to prove non-waiver").

Plaintiffs' waiver argument is premised on the fact that Brown shared his work product with the Receiver. This argument seems to focus, however, on the waiver standard applicable to attorney-client privilege, rather than to work-product protection. "While voluntary disclosure waives the attorney-client privilege, it does not necessarily waive work-product protection."

*Pipeline Prods., Inc. v. Madison Cos., LLC*, No. 15-4890-KHV, 2019 WL 2106111, at *3 (D. Kan. May 14, 2019) (quoting *United States v. Deloitte LLP*, 610 F.3d 129, 139 (D.C. Cir. 2010)). "Rather, the court generally considers whether the voluntarily disclosure was to an adversary or a conduit to an adversary." *Id.* (cleaned up). The rationale for this general waiver rule is simple: "[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). So "[i]n the context of work product, the question is not, as in the case of attorney-client privilege, *whether* confidential communications are disclosed, but to *whom* the disclosure is made—because the protection is designed to protect an attorney's mental processes from discovery by *adverse* parties." *Pipeline Prods., Inc. v. Madison Companies, LLC*, No. 15-4890-KHV-ADM, 2019 WL 3973955, at *5 (D. Kan. Aug. 22, 2019) (emphasis in original) (quoting *SEC v. Herrera*, No. 17-20301, 324 F.R.D. 258, 262 (S.D. Fl. 2017)); *see also Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643, 664, 668 (10th Cir. 2006) (finding waiver where the plaintiff voluntarily produced a document to its adversary in discovery); *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006) (ruling Qwest waived work-product protection for materials it released to federal government agencies that were investigating Qwest).

As noted above, plaintiffs as the party claiming waiver of work-product protection, have the burden to establish waiver. *Lawson v. Spirit AeroSystems, Inc.,* 410 F. Supp. 3d 1195, 1208–09 (D. Kan. 2019). Here, plaintiffs do not claim that New Direction and the Receiver/FSD were ever adversaries or that the Receiver disclosed New Direction's work-product-protected documents to plaintiffs' adversaries. The court cannot say that, on its face, the Receiver-New Direction relationship was adverse, particularly in light of the fact that FSD was a co-defendant

with New Direction in Theriault's first lawsuit. Thus, to the extent that plaintiffs argue New Direction has waived work-product protection as to the green documents listed on the privilege logs, the court finds that plaintiffs have not met their burden of proof to establish such waiver.[4]

**Summary of Work-Product Findings (Green Category)**

Under the standards set forth above and after *in camera* review, the court denies plaintiffs' motion as to the green category of documents. New Direction need not produce any of these documents.

## IV. EMAILS AND MESSAGES BETWEEN NEW DIRECTION EMPLOYEES WITHHELD AS WORK PRODUCT (ORANGE CATEGORY)

Plaintiffs next challenge New Direction's work-product objection to producing 29 emails/Teams messages highlighted in orange on the submittied privilege log, which were sent between New Direction employees without copying Brown or any other attorney.

**Legal Standards: Work-Product Protection Over Communications Between Employees**

The court will apply the work-product legal standards set out above. As specific to this category of documents, the court remains mindful that, "it is well-established that the work product doctrine protects not only documents created by counsel, but may also protect documents created at the direction of counsel" when prepared in anticipation of litigation. *See Deffenbaugh Indus.*,

---

[4] Plaintiffs interpret New Direction's response brief as asserting the joint-defense or common-interest doctrine to protect New Direction's disclosure of work product to the Receiver. (ECF 249, at 3.) The court reads the brief differently. New Direction seems simply to be addressing case law that, in determining who is an "adversary" for work-product waiver, considers whether a party and the recipient of work product share a common interest. This is distinct from the common-interest/joint-defense doctrine that the Tenth Circuit has recognized as "operat[ing] as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of interest with the represented party." *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 705 (10th Cir. 1998). In any event, even if the common-interest/joint-defense exception to waiver applies in this context, it would not be relevant here where the court has not found waiver to begin with.

2021 WL 1612099, at *5. Because "the work-product doctrine shelters the mental processes of the attorney," *Nobles*, 422 U.S. at 238, it may apply to documents created for or by a party that reflect its attorney's mental processes, even when the documents do not pass under the eye of the attorney. *See ACE USA v. Union Pac. R.R. Co.*, No. 09-2194-KHV, 2011 WL 2199820, at *8 (D. Kan. June 6, 2011). Thus, emails (i.e. documents) exchanged between a plaintiff-company's employees (i.e., "for plaintiffs by plaintiffs") discussing the work of the plaintiff's attorney are protected by the work-product doctrine because the legal work "could be subject to scrutiny, interference, or exploitation by an adversary." *Id.* Accordingly, "the purpose of the work product doctrine is furthered by protecting this information from disclosure." *Id.*

The court has reviewed the orange category of documents *in camera* and in conjunction with privilege-log descriptions, applying the above legal standards. All of the emails/messages meet the first and third elements of work-product doctrine in that they are documents prepared by or for a party. And all of the emails/messages were prepared during the time frame January 2021–February 2023, when New Direction reasonably anticipated litigation based on the CFTC's investigation into FSD and depositions of New Direction executives about the same. The court finds, however, that only some discuss or reveal the legal processes of New Direction's attorneys. For the others, New Direction has not demonstrated that "the primary motivating purpose behind the creation of the document" was to share counsel's work product, rather than an exchange of emails "in the ordinary course of business or for other non-litigation purposes." *Kannaday*, 292 F.R.D. at 649 (quoting *Marten,* 1998 WL 13244, at *10). Below are some specific examples.

**<u>Examples of Documents Protected by the Work-Product Doctrine</u>**

<u>FSD Client Lists.</u> A great number of entries on New Direction's privilege log are for a running list of New Direction's clients who had holdings at FSD on various dates after the CFTC

began investigating FSD and Argent. These are the spreadsheets the court discussed above in finding New Direction's privilege log adequate. The spreadsheets contain information about each client, such as the number and types of holdings kept at FSD. Documents the court has reviewed indicate that Brown asked New Direction employees to create the list. Brown's sworn declaration further explains that he requested that employees compile the information in a list to help counsel analyze information, evaluate litigation risks and regulatory exposure, and determine litigation strategy related to the fallout from the criminal activity occurring at FSD. (ECF 247-1, at 6.) The court finds that the running client list—in its various forms depending on date—was created at the direction of counsel in anticipation of litigation. It is work-product. PRIVLOG-00000166 and PRIVLOG-00000169 are protected under this reasoning, as are a number of log entries for the list that are highlighted yellow (set out below). Similarly, emails and messages between employees that discuss what information is to be included on the list and why, such as PRIVLOG-00000165, reflect counsel's mental processes and also are protected work product.

Plaintiffs assert that the client list is a factual compilation such that, to the extent it is work-product, it is "fact work product" that can be overcome. (ECF 241, at 10.) "Work product can be opinion work product, which some courts have held to be absolutely privileged, or non-opinion work product, i.e., fact work product, which may be discoverable under appropriate circumstances." *In re Qwest Commc'ns Int'l Inc.,* 450 F.3d at 1186. A party may overcome fact work-product protection by showing "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A). "The party who wants documents that are protected by the work product doctrine bears the burden of 'proof and persuasion'" and "must show the importance of the information to the preparation of its case and the difficulty it will face in obtaining substantially

equivalent information from other sources if production is denied." *Est. of Taylor v. Fanuc Am. Corp.*, No. 20-1361-KHV-GEB, 2022 WL 2791168, at *8 (D. Kan. July 15, 2022) (cleaned up). Here, plaintiffs have not come close to meeting this burden. First, they have not addressed at all how the FSD client list is important to the preparation of their case. Second, they have not demonstrated that they cannot obtain the substantial equivalent of the lists by other means without incurring undue hardship. To this point, they include only this hypothetical possibility: "Obtaining the substantial equivalent would require Plaintiffs to independently locate and compile the same factual information from original sources—a task that may be impossible if those sources are no longer available or if the passage of time has obscured the contemporaneous state of knowledge." (ECF 241, at 10.) But the information on the list does not appear to be "the type of information that cannot be recreated" or that plaintiffs cannot seek reproduced in another format, such as in an interrogatory response. *Martley v. Basehor, Kan.*, No. 19-2138-HLT, 2021 WL 5371309, at *3 and *4 n.5 (D. Kan. Nov. 18, 2021); *see also* 6 MOORE'S FEDERAL PRACTICE – CIVIL § 26.70[5][c] ("Common examples of essential materials include test results that cannot be duplicated, and photographs taken immediately after an accident when the accident scene has since changed."). Because plaintiffs have not met their burden of proving both substantial need for and the inability to obtain the facts on the list without undue hardship, the client lists remain protected.

<u>Emails Describing Work Done at Counsel's Direction.</u> In another example, PRIVLOG-00000075 is a Teams message from a New Direction finance specialist to her manager describing actions she was taking (relating to New Direction's holdings at FSD) at Brown's request. Similarly, PRIVLOG-00000193 is a message between employees relaying legal advice on what to tell clients about the FSD investigation. These messages reveal Brown's mental processes in helping his client prepare for anticipated litigation. Documents of this ilk—showing actions that

employees were taking at counsel's direction in response to anticipated litigation, are entitled to work-product protection. This includes PRIVLOG-00000012; PRIVLOG-00000065; PRIVLOG-00000075, PRIVLOG-00000136, PRIVLOG-00000193, PRIVLOG-00000241, PRIVLOG-00000251, PRIVLOG-00000252, PRIVLOG-00000253, PRIVLOG-00000255, PRIVLOG-00000257, and the redactions in ND001146771-73 and ND001146768-70, NDO170701-02, NDO170703-04, and NDO145652-145653.

**<u>Examples of Documents Not Protected by the Work-Product Doctrine</u>**

<u>Cover Pages.</u> What one would describe as "cover page" emails or Teams messages that circulate attachments but do not contain any substance—no legal thoughts, facts, or advice—are not protected. *See Softview Computer Prods. Corp. v. Haworth, Inc.*, No. 97 CIV. 8815 KMWHBP, 2000 WL 351411, at *9 (S.D.N.Y. Mar. 31, 2000) (holding "cover letters or facsimile transmittal cover sheets . . . are not entitled to protection by the attorney-client privilege or the work-product doctrine"); *cf. Lee v. State Farm Mut. Auto. Ins. Co.*, 249 F.R.D. 662, 684 (D. Colo. 2008) (noting, "State Farm has included documents in the privilege log such as fax cover sheets, emails, and other transmission documents that do not, on their face, appear to contain any information that is protected by application of the attorney-client privilege" and ordering the documents produced); *Greenfield Com. Credit, L.L.C. v. Catlettsburg Ref., L.L.C.,* No. CV 03-3391, 2006 WL 8456032, at *9 (E.D. La. Apr. 24, 2006) ("[M]ere transmittal messages or cover letters are not privileged because they do not contain confidential communications made for the purpose of giving or obtaining legal advice."). Although the file name of the attachment might arguably reveal legal strategy in certain circumstances, here New Direction's privilege log already reveals the file name, so the cover page itself reveals nothing not already revealed. PRIVLOG-00000105 and PRIVLOG-00000168 fall into this category and are not protected.

Messages not Reflecting Legal Strategy. Documents between employees that do not reflect Brown's legal strategy or directive are another type of document not protected by the work-product doctrine. For example, PRIVLOG-00000040 is a Teams message exchange in which New Direction's Chief Executive Officer informs New Direction's President and Chief Financial Officer that Brown told him an FBI subpoena would be coming and speculating as to what company the subpoena sought information about. Although the message references Brown, it does not reflect his thoughts or legal strategy. It therefore is not protected by the work-product doctrine.

**Summary of Work-Product Findings (Orange Category)**

After analyzing the withheld documents highlighted orange on New Direction's privilege log and applying a similar analysis as in these examples, the court finds that the following documents are not protected, such that New Direction must **produce** them: **PRIVLOG-00000040, PRIVLOG-00000105, PRIVLOG-00000168**, **PRIVLOG-00000183, PRIVLOG-00000218, PRIVLOG-00000220, PRIVLOG-00000221, and PRIVLOG-00000272.**

## V. COMMUNICATIONS FROM NEW DIRECTION EMPLOYEES TO COUNSEL (SOME INCLUDING ATTACHMENTS) WITHHELD AS WORK PRODUCT AND ATTORNEY-CLIENT PRIVILEGED (BLUE AND YELLOW CATEGORIES)

The remaining challenged withholdings are emails and Teams messages sent from New Direction employees to Brown (and occasionally others as well). Those highlighted in blue were sent without attachments; those highlighted in yellow include an attachment that New Direction also has withheld. New Direction's privilege log states that New Direction is withholding the documents under both the attorney-client privilege and the work-product doctrine. Plaintiffs argue that, to the extent the documents contain non-privileged facts, New Direction must produce them with the non-privileged facts revealed. The court considers the applicability of the attorney-client

privilege first and then, for the documents not found subject to that privilege, the applicability of the work-product doctrine.

**A. Attorney-Client Privilege**

**Legal Standards: The Attorney-Client Privilege**

The parties do not address whether federal or state—and if state, which state—law governs the attorney-client privilege. The complaint in *Theriault* asserts claims under federal common law and under Kansas and Vermont statutory law. The complaint in *Wallace* asserts claims under federal common law and California statutory law. When plaintiffs assert both federal and state-law claims, the court must consider both federal and state law when deciding questions of attorney-client privilege. *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1369 (10th Cir. 1997). But courts in this district have found that there is "no real conflict between federal and Kansas law regarding the attorney-client privilege" and thus apply federal law when both federal and Kansas state-law claims are asserted in a lawsuit. *Klaassen v. Univ. of Kan. Sch. of Med.*, No. 13-2561-DDC-KGS, 2016 WL 6138169, at *3 (D. Kan. Oct. 21, 2016) (quoting *C.T. v. Liberal Sch. Dist. USD 480*, Nos. 06-2093-JWL, 06-2360-JWL, 06-2359-JWL, 2008 WL 217203, at *2 (D. Kan. Jan. 25, 2008) (internal modifications omitted)); *In re Motor Fuel Temp. Sales Pracs. Litig.*, No. 07-MD-1840-KHV, 2010 WL 11431875, at *2 (D. Kan. July 7, 2010). Here, no party has suggested that Vermont or California applies a standard significantly different than the federal standard either. The court therefore finds it appropriate to look to federal law in determining the applicability of attorney-client privilege to New Direction's withheld documents.

Under federal common law, the attorney-client privilege protects "confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Proc.*, 616 F.3d 1172, 1182 (10th Cir. 2010)

(internal quotations omitted); *see also Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL-DJW, 2006 WL 1867478, at *5 (D. Kan. July 1, 2006) ("Under federal common law, the essential elements of the attorney-client privilege are: (1) Where legal advice is sought (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived."). The privilege also protects advice given by the lawyer in the course of representing the client. *See New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)). Thus, in evaluating claims of attorney-client privilege, the court considers whether the communication is made for the purpose of obtaining or giving legal advice. Communications that solely relate to business advice are not protected. *See TP ST Acquisition, LLC v. Lindsey*, No. 21-2020-JAR, 2022 WL 252001, at *2 (D. Kan. Jan. 26, 2022); *Burton v. R.J. Reynolds Tobacco Co.*, 200 F.R.D. 661, 667, 669 (D. Kan. 2001). Where a communication contains both legal advice and business advice, attorney-client privilege only applies if the legal advice predominates over the business advice. *See In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2017 WL 1106257, at *7 (D. Kan. Mar. 24, 2017). New Direction, as the party asserting attorney-client privilege bears, the burden to establish it applies. *See United States v. Merida*, 828 F.3d 1203, 1209 (10th Cir. 2016); *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010).

**<u>Communications Conveying Facts Retain Attorney-Client Protection</u>**

Plaintiffs' primary challenge to New Direction's application of the attorney-client privilege is that documents "appear to contain non-privileged factual information gathered and reported by New Direction employees"—such as in the FSD-client spreadsheets discussed above. Plaintiffs

argue that "underlying facts" conveyed in the withheld documents are not protected. To this there can be no dispute. "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981); *see also TP ST Acquisition*, 2022 WL 252001, at *2 ("[U]nderlying facts do not become privileged merely because they are conveyed between attorney and client."). This rule does not mean, however, that written communications reporting facts must be produced, as plaintiffs argue. (ECF 241, at 9 ("New Direction should be required to produce all factual content while redacting only genuinely privileged legal advice or communications.").) Rather, the communications (assuming they meet the other elements of the privilege) remain protected, but plaintiffs may seek the facts reported therein by other means. *See Upjohn*, 449 U.S. at 396 ("The client cannot be compelled to answer the question, 'What did you . . . write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."). U.S. Magistrate Judge Teresa James eloquently explained the distinction in a recent order:

> If the[] communications otherwise meet all the elements of the privilege, then those communications are privileged notwithstanding the fact they may contain factual information that is not privileged. Stated a different way, the privilege applies to the *communication* that may convey a fact, but including the fact in the communication does not make the fact itself privileged. It's the difference between asking, "What fact did you speak or write to your attorney?" (privileged) and "What fact do you know?" (not privileged). Requiring [a party] to produce documents that disclose the facts they included in their communications with their attorneys is equivalent to asking them to disclose "what fact(s) did you write to your attorney."

*Burge v. Teva Pharm. Indus., Ltd.,* No. 22-cv-2501-DDC-TJJ, 2025 WL 2172466, at *16 (D. Kan. July 31, 2025) (holding, "Plaintiffs' email communications conveying facts to their attorneys for the purpose of obtaining legal advice" were privileged).

The court has reviewed *in camera* the blue and yellow-highlighted documents on New Direction's privilege log. Considering the information gleaned from them as a whole and in conjunction with Brown's declaration (ECF 247-1), the court finds that, as to the majority, New Direction has met its burden to establish the communications identified were for the purpose of requesting or providing legal advice, in light of potential lawsuits against New Direction stemming from accounts held at FSD. Although the confidential communications often contained non-privileged facts that plaintiffs might be inclined to discover by other methods, the communications themselves remain privileged under the legal standards explained above.

**Documents Not Subject to the Attorney-Client Privilege**

There are two categories of documents, however, for which the court finds New Direction has not demonstrated the applicability of the attorney-client privilege.

Cover Pages. There is a large category of documents that the court does not find subject to the attorney-client privilege. These are emails and Teams messages that contain no substance in the body of the email/message, but simply serve as a means of transmitting attachments. For example, PRIVLOG-00000023 is an email from a New Direction operations specialist to Brown, transmitting letters that New Direction has agreed to produce. The email contains the employee's signature block and what appear to be standard disclaimers (on COVID-19 and tax advice) that automatically attach to every email the employee sends, but no additional substance. The email identifies the title of its attachments, but those titles do not suggest what advice the employee is seeking from the attorney. Moreover, "general topics of attorney-client discussions" are not

protected by the privilege in any event. *In re CCA Recordings 2255 Litig. v. United States*, 337 F.R.D. 310, 326 (D. Kan. 2020) (quoting *Sprint Commc'ns Co. v. Comcast Cable Commc'ns, LLC*, Nos. 11-2685, 11-2686, 2014 WL 545544, at *6 (D. Kan. Feb. 11, 2014)). The court discussed similar "cover page" messages in its analysis above of the orange-highlighted documents. These emails/messages do not communicate anything at all, let alone information for the purpose of giving or receiving legal advice. *See Softview Computer Prods.,* 2000 WL 351411, at *9; *Lee,* 249 F.R.D. at 684; *Greenfield Com. Credit,* 2006 WL 8456032, at *9. So the following documents falling into this category are not protected by the privilege: PRIVLOG-00000023, PRIVLOG-00000098, PRIVLOG-00000103, PRIVLOG-00000107, PRIVLOG-00000109, PRIVLOG-00000113, PRIVLOG-00000118, PRIVLOG-00000120, PRIVLOG-00000123, PRIVLOG-00000125, PRIVLOG-00000134, PRIVLOG-00000147, PRIVLOG-00000159, PRIVLOG-00000161, PRIVLOG-00000170, PRIVLOG-00000174, PRIVLOG-00000176, PRIVLOG-00000185, PRIVLOG-00000195, PRIVLOG-00000196, PRIVLOG-00000197, PRIVLOG-00000198, PRIVLOG-00000200, and NDO170680.[5]

Public Document Not Conveyed for Purpose of Legal Advice. In addition, New Direction has withheld a publicly filed court order entered in the District of Delaware CFTC litigation against FSD, Argent, and Higgins. This is identified on the privilege log as PRIVLOG-00000269. It appears to have been attached to a message from Brown to a number of employees. There is no indication in the transmittal message that the order was sent to convey legal, rather than business,

[5] New Direction's privilege log notes NDO170680 as being produced with redactions. But the court's review of the document indicates that no redactions were made. In any event, the document is simply a cover-page Teams message, attaching publicly filed court documents. As discussed above, such non-substantive cover pages are not privileged.

advice. Thus, New Direction has not met its burden to show the order is protected by the attorney-client privilege.

**Summary of Attorney-Client Privilege Findings (Blue and Yellow Categories)**

In sum, having conducted an *in camera* review and applied the above-mentioned legal principles to the blue and yellow categories of documents, the court finds New Direction has met its burden to establish the communications were for the purpose of requesting or providing legal advice, and thus were properly withheld as privileged, other than as to the cover page documents and as to PRIVLOG-00000269. In addition, the court makes no determination as to whether the yellow-highlighted documents that are various versions of the FSD client list are protected by the attorney-client privilege, given that the list—created at Brown's direction—falls more in the ambit of work product, so is addressed below.

**B. Work-Product Protection**

As noted, New Direction's privilege log asserts that it is withholding the emails and Teams messages sent from New Direction employees to Brown under both the attorney-client privilege and the work-product doctrine. The court has found most of these documents protected by the attorney-client privilege. But as for the documents the court has not found subject to that privilege, the court has applied the work-product legal standards set forth above.

**FSD Client List Is Protected Work Product**

The court analyzed above, for the orange-highlighted documents, whether the running list of New Direction's clients who had holdings at FSD on various dates after the CFTC began investigating FSD and Argent was protected work product. The court found that it was and that plaintiffs have not demonstrated substantial need and undue hardship to overcome work-product protection. Under that same analysis, the court finds the 22 yellow-highlighted documents that are

various versions of the FSD client list subject to work-product protection. Plaintiffs' motion to compel is denied as to these documents.

**Documents Not Protected by Work-Product Doctrine**

There are two categories of documents, however, for which the court finds New Direction has not demonstrated the applicability of the work-product doctrine.

Cover Pages. In reviewing the orange category of documents, the court also considered whether "cover page" emails/messages constitute work product. The court concluded that they do not. Under that analysis, the court finds the documents in the following log entries not work product: PRIVLOG-00000023, PRIVLOG-00000098, PRIVLOG-00000103, PRIVLOG-00000107, PRIVLOG-00000109, PRIVLOG-00000113, PRIVLOG-00000118, PRIVLOG-00000120, PRIVLOG-00000123, PRIVLOG-00000125, PRIVLOG-00000134, PRIVLOG-00000147, PRIVLOG-00000159, PRIVLOG-00000161, PRIVLOG-00000170, PRIVLOG-00000174, PRIVLOG-00000176, PRIVLOG-00000185, PRIVLOG-00000195, PRIVLOG-00000196, PRIVLOG-00000197, PRIVLOG-00000198, PRIVLOG-00000200 and NDO170680.

Public Document Not Reflecting Legal Strategy or Directive. With respect to the publicly filed court order entered at PRIVLOG-00000269, the court considered whether it could be deemed to reflect Brown's legal strategy or mental processes. The court finds that it does not. Although Brown is the one that sent the District of Delaware court order to FSD employees, the cover message transmitting it suggests that he was sending it for business, not legal, purposes. Thus, the fact that Brown sent it does not reveal Brown's legal strategy or directive. Thus, New Direction has not met its burden to show the order is protected by the work-product doctrine.

**<u>Summary of Work-Product Findings (Blue and Yellow Categories)</u>**

In sum, having conducted an *in camera* review and applied the above-mentioned legal principles to the blue and yellow categories of documents, the court finds New Direction has met its burden to establish the FSD client lists are protected work product. But New Direction has not demonstrated that the non-substantive cover pages or the court order identified at PRIVLOG-00000269 are protected.

**C. Summary of Privilege Holdings (Blue and Yellow Categories)**

Plaintiffs' motion to compel is granted in part and denied in part as to the blue and yellow categories of documents. After reviewing these documents *in camera* and applying the legal standards discussed above, the court finds the following documents are not protected by either the attorney-client privilege or the work-product doctrine and that New Direction must **produce** them:. **PRIVLOG-00000023, PRIVLOG-00000098, PRIVLOG-00000103, PRIVLOG-00000107, PRIVLOG-00000109, PRIVLOG-00000113, PRIVLOG-00000118, PRIVLOG-00000120, PRIVLOG-00000123, PRIVLOG-00000125, PRIVLOG-00000134, PRIVLOG-00000147, PRIVLOG-00000159, PRIVLOG-00000161, PRIVLOG-00000170, PRIVLOG-00000174, PRIVLOG-00000176, PRIVLOG-00000185, PRIVLOG-00000195, PRIVLOG-00000196, PRIVLOG-00000197, PRIVLOG-00000198, PRIVLOG-00000200, PRIVLOG-00000269, and NDO170680.** The court finds the other blue and yellow-highlighted documents protected and appropriately withheld on privilege grounds.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel New Direction to produce documents being withheld under the attorney-client privilege and/or the work-product doctrine (ECF 232) is granted in part and denied in part, as set forth above. To the extent the

motion is granted, New Direction is ordered to produce the 33 documents—set out above in bold—by **August 31, 2026**.

**IT IS FURTHER ORDERED** that New Direction's motion for leave to file a surreply (ECF 256) is denied as moot.

Dated August 24, 2026, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge