**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| JOSEPH THERIAULT and WILLIAM WEIGEL, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEW DIRECTION IRA, INC., NEW DIRECTION TRUST COMPANY, and MAINSTAR TRUST,<br><br>Defendants. | **CONSOLIDATED CASES**<br><br>Case No. 23-2477-JWB-ADM |
| CHRISTY WALLACE, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEW DIRECTION IRA, INC., NEW DIRECTION TRUST COMPANY, and MAINSTAR TRUST,<br><br>Defendants. | Case No. 24-2007-JWB-ADM |

**MEMORANDUM AND ORDER**

The above-captioned putative class actions have been consolidated for discovery purposes. They are now before the court on plaintiffs' motion to compel New Direction IRA, Inc. and New Direction Trust Company (together, "New Direction") to produce documents responsive to Request No. 9 of plaintiffs' third requests for production, as narrowed. (ECF 284.) The motion is granted.

## I. BACKGROUND

New Direction provides account-administration and custodian services for self-directed individual retirement accounts ("IRAs"). The IRAs give account holders a tax-privileged way to hold assets. Plaintiffs are former New Direction clients who opened IRAs that invested in precious metals. As part of the account-creation process, each plaintiff was required to select a depository for physically storing the precious metals held in their accounts. Plaintiffs allege that New Direction identified First State Depository ("FSD") to clients and potential clients, and steered clients to select FSD as the depository for their metals.

In 2019, the Commodity Futures Trading Commission ("CFTC") began investigating FSD; FSD's owner, Robert Higgins; and a related Higgins-owned company called Argent Asset Group LLC ("Argent"). In 2022, the CFTC filed a civil-enforcement action against FSD, Higgins, and Argent in the U.S. District Court for the District of Delaware, alleging the three operated a fraudulent silver-leasing scheme. *CFTC v. First State Depository Company,* LLC, Case No. 1:22-cv-1266-RGA (D. Del.). In 2023, a series of orders found FSD, Higgins, and Argent liable for misappropriating more than $110 million of the precious metals deposited at FSD.[1] A large amount of the stolen precious metals were from self-directed IRA accounts, including plaintiffs' New Direction accounts.

In the present consolidated cases, plaintiffs allege that defendants committed fraud, were negligent, breached fiduciary duties, and violated various state consumer-protection laws by, among other things, making inaccurate representations about the security and reputation of FSD.

[1] Higgins was later convicted of criminal fraud and tax evasion, as well.

Plaintiffs allege that New Direction identified FSD in its communications with potential clients, but did not disclose damning information about FSD and Higgins.

During discovery, a dispute arose about whether New Direction must produce documents in response to plaintiffs' Request No. 9 of plaintiffs' third requests for production of documents. Request No. 9 asks New Direction to "[p]roduce any and all communications in which you identified or recommended First State Depository or Mr. Robert Higgins as a depository to anyone." (ECF 284-1, at 5.) New Direction objects that, to the extent Request No. 9 seeks communications with persons other than the approximately 540 putative class members (persons whom the FSD receiver has identified as victims of the FSD/Higgins misappropriation), responding would be incredibly burdensome and disproportionate to the needs of this case. (*See, e.g.* 297-1, at 21-24.)

The court convened a discovery conference on July 27, 2026, to discuss the dispute. During the conference, New Direction explained the burdens associated with searching individuals' accounts one-by-one.[2] New Direction stated that searching by individual account for each of the 540 putative class members resulted in discovering more than 233,000 responsive documents, and argued that performing the same account-level search for the more than 44,000[3] additional New Direction client accounts holding precious metals "defies logic." (*Id.* at 23.) New Direction emphasized that "there's been multiple [data storage] systems in place" at New Direction since its

[2] New Direction represented that such a search involves reviewing "every piece of transfer paperwork, every account opening document, every buy direction letter," among other things. (ECF 297-1, at 24.)

[3] New Direction's statements during the conference do not accord with the declaration submitted by its General Counsel, Travis Brown, with its response brief (ECF 297-2). Brown declared that, as of December 31, 2022, New Direction custodied approximately 81,808 self-directed accounts, with 9,597 of those self-directed accounts containing precious metals within their asset portfolios. (*Id.* at 3.)

clients began using FSD in 2010. (*Id.* at 26.) In response, plaintiffs explained that they "didn't intend this request to ask for" documents at the level of detail New Direction produced for the putative class members. (*Id.* at 25.) Rather, plaintiffs stated that they are only seeking "e-mail communications from representatives of the [New Direction] Precious Metals Asset Team . . . or other representatives . . . responsible for communicating with account holders about these issues." (*Id.* at 27-28.) New Direction expressed its understanding "that the request has been modified to focus on e-mails exclusively." (*Id.* at 27.) The court granted plaintiffs leave to file a motion to compel New Direction's production of documents in response to Request No. 9. (ECF 278.)

Plaintiffs timely filed the present motion to compel. Plaintiffs' memorandum in support includes a screen shot of an email from a New Direction employee to plaintiff William Weigel, mentioning FSD. (ECF 285, at 5.) Plaintiffs then stated that they sought "communications of this sort – any communications between New Direction and any person identifying FSD as a depository." (*Id.*) Plaintiffs did not explicitly state the narrowed scope of Request No. 9 discussed during the discovery conference. New Direction's response brief accused plaintiffs of "reneging" on their commitment to narrow the scope of the request to *email* communications. (ECF 297, at 2-3.) New Direction went on to assert that Request No. 9 is disproportionate to the needs of the case, even as narrowed. But plaintiffs then clarified in their reply that they agree to the narrowed version of Request No. 9 and "did not intend their motion to compel to state otherwise." (ECF 298, at 1.) Plaintiffs stated that they are asking the court to compel New Direction to conduct "limited searches of particular New Direction employee email accounts," i.e., "the email accounts of those particular New Direction employees whose job duties included communicating with clients about the selection depositories." (ECF 298, at 1-2.) The court thus evaluates whether plaintiffs are entitled to the discovery sought in Request No. 9 as so narrowed.

## II. ANALYSIS

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment); *see also Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (analyzing the 2015 amendment and concluding that it did not change the scope of discovery but clarified it, and therefore *Oppenheimer* still applies). In determining whether a discovery request is proportional to the needs of the case, the court considers, to the extent applicable, the following six factors: "[1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

When the discovery sought appears relevant on its face or the discovering party has established relevance, the party resisting discovery bears the burden to support its objections. *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (ruling the party resisting discovery bears the burden to show why a discovery request is improper); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request."). This burden extends to demonstrating that the discovery is disproportionate to the needs of the case. *See*

*Phillips v. Boilermaker-Blacksmith Nat'l Pension Tr.,* No. 19-2402-TC-BGS, 2024 WL 3471333, at *5 (D. Kan. July 19, 2024) ("Because the discovery sought is relevant on its face, the Defendants now hold the burden of showing that the discovery sought would impose an undue burden or expense that is disproportionate to the needs of the case."). The party resisting discovery does not carry this burden by asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004). Rather, an objecting party "must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production . . . is objectionable." *Id.* at 670-71.

New Direction does not meaningfully attack the relevance of Request No. 9. Rather, it simply asserts that "the records Plaintiffs seek are patently irrelevant." (ECF 297, at 2.) This conclusory statement is not sufficient for New Direction to meet its burden of supporting its relevance objection. In any event, the court finds the information sought in Request No. 9 relevant. A key issue in the case is the extent to which New Direction identified or recommended FSD to actual or potential clients. Plaintiffs assert New Direction identified FSD as a depository with which it worked and may have steered accountholders to use FSD, without disclosing damning information about FSD and Higgins. New Direction asserts that precious metals dealers, not New Direction, often identified FSD to accountholders. The documents sought by Request No. 9—emails in which New Direction employees identified or recommended FSD as a depository—easily meet the liberal relevance standard because they bear on this issue in the case.

New Direction's primary objection to Request No. 9 is that it is not proportional to the needs of the case because it "places an incredible burden on the New Direction Defendants."[4] (ECF 297, at 2.) As the objecting party, New Direction has "the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome." *Pipeline Prods., Inc. v. Madison Cos.*, No. 15-4890-KHV, 2018 WL 3055869, at *3 (D. Kan. June 20, 2018) (quoting *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002)). This imposes an obligation on New Direction "to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents." *Id.* Discovery will be allowed unless the hardship imposed on New Direction as the responding party is unreasonable compared to the benefits to be secured from the discovery. *Taylor v. Hy-Vee, Inc.*, No. 15-9718-JTM, 2016 WL 7405669, at *5 (D. Kan. Dec. 22, 2016).

New Direction has submitted the declaration of its General Counsel, Travis Brown, in support of its argument that responding to Request No. 9 is unduly burdensome. (ECF 297-2.) Brown explains the burdens that would be imposed on New Direction if it were to do "a manual review . . . of each individual account," in order to fully respond to Request No. 9 as originally written. (*Id.* at 4.) Brown states as follows:

> Due to data losses experienced during New Direction's data migrations and New Direction's document retention schedule, a simple database search will not necessarily capture all correspondence that was exchanged with an accountholder over time. Instead, in order to respond to Plaintiffs' Request No. 9, a manual review would be required of each individual account in order to capture, at best, screenshots of past communications that are no longer available in Outlook.

[4] New Direction does not directly address any other proportionality factor.

(*Id.*) Significantly, however, Brown does not address the burdens of responding to Request No. 9 as narrowed by plaintiffs. As explained above, during the discovery conference (and confirmed in plaintiffs' reply brief), plaintiffs now only seek "limited searches of particular New Direction employee email accounts."[5] (ECF 298, at 2.) The court interprets this narrowing to require a key-word search in the email accounts of New Direction employees whose job duties included communicating with clients about selecting depositories. Such a search would be limited to the email accounts in databases that New Direction can reasonably access, i.e., New Direction would not be required to manually search for emails lost due to platform migration or its document-retention policy, and New Direction would not be required to search its previous data-storage platform Oracle RightNow, despite acknowledging that screenshots of email correspondence could be saved therein in individual client accounts. As so limited, New Direction has not addressed the burden of responding to Request No. 9, nor demonstrated that responding to Request No. 9 is disproportionate to the needs of the case. Thus, New Direction's objections to responding to Request No. 9 are overruled.

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel New Direction to produce documents responsive to Request No. 9 of plaintiffs' third requests for production, as narrowed (ECF 284), is granted.

Dated September 4, 2026, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge

[5] To the extent one could argue plaintiffs' position was not entirely clear until their reply brief, the court notes that New Direction did not seek leave to file a sur-reply to address the burden of complying with the narrowed request.