**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| JOSEPH THERIAULT and WILLIAM WEIGEL, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEW DIRECTION IRA, INC., NEW DIRECTION TRUST COMPANY, and MAINSTAR TRUST,<br><br>Defendants. | **CONSOLIDATED CASES**<br><br>Case No. 23-2477-JWB-ADM |
| CHRISTY WALLACE, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEW DIRECTION IRA, INC., NEW DIRECTION TRUST COMPANY, and MAINSTAR TRUST,<br><br>Defendants. | Case No. 24-2007-JWB-ADM |

**MEMORANDUM AND ORDER**

On July 9, 2025, the court consolidated the above-captioned putative class actions for discovery and pretrial case-management purposes. (ECF 137.) The cases are now before the court on two discovery motions brought by New Direction IRA, Inc. and New Direction Trust Company (together, "New Direction"). First, New Direction moves to compel plaintiff Joseph Theriault to produce unredacted versions of emails in which the redacted information is being withheld under the attorney-client privilege. (ECF 322.) Second, New Direction moves to compel Theriault to

produce communications made on the Telegram app and, to the extent he has produced Telegram messages, to re-produce them without redactions for privilege. (ECF 323.) For the reasons discussed below, the motion to compel emails is granted and the motion to compel Telegram communications is granted in part and denied in part.

## I. BACKGROUND

New Direction provides account-administration and custodian services for self-directed individual retirement accounts ("SDIRAs"). Plaintiffs are account holders of SDIRAs that New Direction administered. As part of the account-creation process with New Direction, each plaintiff submitted a form directing that the precious metals purchased in their accounts be stored at First State Depository ("FSD"), an institution that, according to plaintiffs, New Direction recommended as a place to hold precious metals.

In September 2022, the Commodity Futures Trading Commission ("CFTC") filed a lawsuit against FSD and its owner, Robert Higgins, in the U.S. District Court for the District of Delaware, alleging that FSD and Higgins had stolen more than $110 million of the precious metals deposited at FSD. *CFTC v. First State Depository Company,* LLC, Case No. 1:22-cv-01266-RGA (D. Del.). A large amount of the stolen assets included precious metals from SDIRAs, including the New Direction accounts of each plaintiff. In October 2022, the Delaware court appointed a receiver to stand in FSD's shoes and assess its assets.

The receiver then communicated with persons whom the receiver had identified as victims of the FSD/Higgins misappropriation (approximately 540 persons). According to plaintiffs, when such victims "contacted the FSD Receiver and his staff, they were given each other's contact information and encouraged to communicate with one another, seek counsel, and explore a possible lawsuit against New Direction." (ECF 325, at 3.) In February 2023, some of the victims,

including Theriault, formed an email group and, from February 9-20, exchanged emails about discussions some had with attorneys about a potential lawsuit against New Direction. On February 21, some of the FSD victims, including Theriault, moved their discussions to the Telegram social media app and thereafter communicated on Telegram.

On March 3, Theriault filed a class-action lawsuit against FSD and New Direction Trust Company based on the same factual underpinnings as in the current litigation. *Theriault v. New Direction Trust Co.*, Case No. 23-2091 (D. Kan.). On March 9, at Theriault's counsel's suggestion, he left the FSD victims Telegram group. Thereafter, Theriault could not access messages in that group—including his own past messages.

Theriault voluntarily dismissed the first case in May 2023. In late 2023 and early 2024, plaintiffs filed the above-captioned cases against New Direction and Mainstar Trust as administrator and custodian of the SDIRAs.

Discovery proceeded in these consolidated cases. In response to written discovery, Theriault withheld—in whole or in part via redactions—email and Telegram communications between the FSD victims based on attorney-client privilege.[1] New Direction challenged the privilege assertions.

[1] Theriault's discovery responses objected to production based on attorney-client privilege. (ECF 323-4, at 9-10.) Theriault's privilege log, however, asserted the additional ground that the communications are protected work-product. Then in response to the present motions, Theriault argues only that the attorney-client privilege applies. (ECF 325 (never mentioning work product), 333 (mentioning work product once, but ultimately "rest[ing] on the same arguments that he articulated in [325]").) At this procedural juncture, the court construes Theriault as only asserting attorney-client privilege protection. *See, e.g., Kannaday v. Ball*, 292 F.R.D. 640, 644 (D. Kan. 2013) ("[O]bjections initially raised but not supported in the objecting party's response to the motion to compel are deemed abandoned."); *Firestone v. Hawker Beechcraft Int'l Serv. Co.*, No. 10-1404, 2011 WL 13233153, at *2 (D. Kan. Sept. 28, 2011) ("Objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned." (internal quotations and citation omitted)).

On September 10, 2026, the court convened a pre-motion discovery conference at the parties' request to address the disputes. (ECF 311.) As to the withheld email communications, the court granted New Direction leave to file a motion to compel Theriault's email communications with the FSD victims. (*Id.* at 1-2.) As to the Telegram communications, the parties reported that they had resolved the dispute in the hours before the conference, as Theriault agreed to produce "his Telegram communications with other FSD customers to the extent that he can access them and subject to any privilege objection." (*Id.* at 2.) New Direction then filed the present motions.

## II. MOTION TO COMPEL EMAIL COMMUNICATIONS (ECF 322)

At issue in New Direction's first motion is whether Theriault's pre-litigation email communications with other victims of FSD's malfeasance are protected from disclosure under the attorney-client privilege.

### A. LEGAL STANDARDS

The parties do not address whether federal or state law (and if state law, which state) governs the attorney-client privilege. Theriault asserts claims under federal common law and under Kansas and Vermont statutory law. When plaintiffs assert both federal and state-law claims, the court must consider both federal and state law when deciding questions of attorney-client privilege. *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1369 (10th Cir. 1997). But courts in this district have found that there is "no real conflict between federal and Kansas law regarding the attorney-client privilege" and thus apply federal law when both federal and Kansas state-law claims are asserted in a lawsuit. *Klaassen v. Univ. of Kan. Sch. of Med.*, No. 13-2561-DDC-KGS, 2016 WL 6138169, at *3 (D. Kan. Oct. 21, 2016) (quoting *C.T. v. Liberal Sch. Dist. USD 480*, Nos. 06-2093-JWL, 06-2360-JWL, 06-2359-JWL, 2008 WL 217203, at *2 (D. Kan. Jan. 25, 2008)

(internal modifications omitted)); *In re Motor Fuel Temp. Sales Pracs. Litig.*, No. 07-MD-1840-KHV, 2010 WL 11431875, at *2 (D. Kan. July 7, 2010). Here, no party has suggested that Vermont applies a standard significantly different than the federal standard either. The court therefore finds it appropriate to look to federal law in determining the applicability of attorney-client privilege to Theriault's withheld communications.

Under federal common law, the attorney-client privilege protects "confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Proc.*, 616 F.3d 1172, 1182 (10th Cir. 2010) (internal quotations omitted); *see also Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL-DJW, 2006 WL 1867478, at *5 (D. Kan. July 1, 2006) ("Under federal common law, the essential elements of the attorney-client privilege are: (1) Where legal advice is sought (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived."). The privilege also protects advice given by the lawyer in the course of representing the client. *See New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)). "A party claiming the attorney-client privilege must prove its applicability, which is narrowly construed." *United States v. Merida*, 828 F.3d 1203, 1209 (10th Cir. 2016). Thus, Theriault bears the burden of establishing that the underlying communications with attorneys, which the FSD victims discussed in their emails and Telegram messages, were (1) made for the purpose of obtaining legal assistance from a lawyer and (2) made in confidence.

After establishing the attorney-client privilege, the party claiming privilege further bears the burden of demonstrating it has not been waived. *See United States v. Lewis*, 943 F.2d 58

(Table), 1991 WL 172666, at *3 (10th Cir. 1991) ("The proponent of the attorney-client privilege bears the burden of establishing both that the communications at issue are privileged and that the privilege was not waived."); *No Spill, LLC v. Scepter Canada, Inc*., No. 18-cv-2681-HLT-KGG, 2022 WL 2270237, at *4 (D. Kan. June 23, 2022) ("Since one of the elements of the attorney-client privilege is that the privilege has not been waived, the burden to establish that waiver has not occurred remains with the party asserting the privilege."). Typically, "[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party." *Lewis*, 1991 WL 172666, at *3. However, a recognized exception to the waiver rule exists in the common-interest doctrine. *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1195 (10th Cir. 2006) (noting "the 'joint defense' or 'common interest' doctrine provides an exception to waiver"); *Coe v. Cross-Lines Ret. Ctr., Inc*., No. 22-2047-EFM-ADM, 2022 WL 17338289, at *8 (D. Kan. Nov. 30, 2022) ("The common-interest doctrine is an exception to waiver that protects information and documents shared outside the attorney-client relationship."). To remain protected under the common-interest doctrine, communications must be made "in the course of a 'joint effort with respect to a common legal interest' and for the purpose of furthering that effort." *Coe*, 2022 WL 17338289, at *7 (quoting *Lawson v. Spirit AeroSystems, Inc.,* 410 F. Supp. 3d 1195, 1209 (D. Kan. 2019)). "Courts have generally required that the nature of the parties' common interest 'be identical, not similar, and be legal, not solely commercial.'" *Id.* (quoting *Lawson*, 410 F. Supp. 3d at 1209).

Finally, the court notes that Theriault, to meet his burdens, "must make a 'clear showing'" that the attorney-client privilege applies. *Kannaday v. Ball*, 292 F.R.D. 640, 644 (D. Kan. 2013) (quoting *McCoo v. Denny's Inc*., 192 F.R.D. 675, 680 (D. Kan. 2000)). He must "describ[e] the documents in sufficient detail 'so that the opposing party and the court can evaluate the claimed

privilege.'" *Coe*, 2022 WL 17338289, at *3 (quoting *In re Syngenta AG MIR 162 Corn Litig*., No. 14-MD-2591-JWL, 2017 WL 1106257, at *5 (D. Kan. Mar. 24, 2017)). This burden "cannot be discharged by mere conclusory assertions or blanket claims of privilege." *Presbyterian Manors, Inc. v. Simplexgrinnell, L.P.,* No. 09-2656-KHV, 2010 WL 3880027, at *4 (D. Kan. Sept. 28, 2010); *see also Johnson v. Gmeinder,* No. 98-2556-GTV, 2000 WL 133434, at *4 (D. Kan. Jan. 20, 2000) ("That burden cannot be discharged by mere conclusory or ipse dixit assertions." (cleaned up)).

### B. APPLICATION

The court turns first to Theriault's assertion of privilege over excerpts from certain email communications with other FSD victims prior to engaging counsel. He relies solely on the undersigned judge's opinion in *Coe* to argue, "When putative class members coalesce in advance of a class action's filing in a common and joint effort to seek and find legal counsel, then come together via group email communications to share what they have said to, heard and learned from the potential legal counsel before hiring them, those communications should be and are protected by the attorney client privilege and the common interest doctrine." (ECF 325.) The distinctions between the record presently before the court here and the one presented in *Coe*, however, are fatal to Theriault's position.

As set forth above, two of the elements that must be present for the attorney-client privilege to apply are that the communications with attorneys must have been made (1) for the purpose of obtaining legal assistance from a lawyer and (2) in confidence. In *Coe*, the plaintiffs provided a factual record from which the court found that "client questionaries" drafted by potential class counsel and executed by putative class members to gather and share facts underlying the then-potential lawsuit met both of these factors. *Coe*, 2022 WL 17338289, at *4 ("[P]laintiffs have

submitted a detailed privilege log accompanied by a narrative in support of their privilege assertions [and] [t]hrough these materials . . . plaintiffs have met their burden to demonstrate these elements of the attorney-client privilege."). The court went through detailed analyses addressing how plaintiffs met each of the two elements. *Id.* at *5-*7. The court concluded that the privilege applied to the communications (i.e., the questionnaires) between the prospective class members and the prospective attorneys.

In this case, the responsive documents Theriault claims are privileged are one step removed from communications with prospective attorneys. They reflect more generalized chatter amongst aggrieved individuals reflecting preliminary planning about potentially taking legal action. They consist of emails between FSD victims, *not* communications that counsel instigated to seek specific information necessary to render legal advice, as the questionnaires did in *Coe*. Email threads like the ones at issue in this case *might* still be privileged; but not solely based on the holding in *Coe*. Rather, Theriault has the burden to demonstrate that the underlying communications to/from counsel were made for the purpose of seeking legal advice *and* were made in confidence. And he must do so in sufficient detail and not based on ipse dixit assertions. Theriault has not met this burden. Rather, Theriault's position would require the court to assume that the underlying communications with counsel were protected by the attorney-client privilege. Yet Theriault has produced no evidence nor set out any information—other than his conclusory statement—that each of the pertinent underlying communications between FSD victims and potential attorneys met the two salient factors necessary for attorney-client privilege.

For example, unlike in *Coe*, Theriault's privilege log does not set out any information about the underlying attorney communications, such as the date of the communication, who the communication was from, who the communication was to, and whether anyone else was privy to

the communication. *See Coe*, 2022 WL 17338289, at *3 (finding privilege log in chart format and accompanying narrative established "(1) the specific privilege asserted, (2) the identity of the resident executing the Questionnaire, (3) the date the Questionnaire was submitted to counsel, and (4) circumstances surrounding the execution and submission that might suggest the resident's purpose in taking those actions"). Nor does Theriault present an affidavit or other evidence describing how the privilege factors apply to the underlying communications. Further, the court has reviewed the subject emails, and they are too amorphous to reveal the context and circumstances surrounding the underlying communications. Theriault simply has not met his burden to show that the attorney-client privilege applies here, despite the court's recognition that it can apply in certain pre-litigation circumstances.

Theriault's arguments focus almost solely on the applicability of the common-interest doctrine. Yet *Coe* applied the common-interest doctrine only after first determining that two factors of the attorney-client privilege were satisfied. *Coe* addressed the doctrine in determining whether any potential class plaintiff waived privilege by sharing information on an executed questionnaire with another potential class plaintiff. *Coe,* 2022 WL 17338289, at *7 ("The common-interest doctrine is an exception to waiver that protects information and documents shared outside the attorney-client relationship."). As the court explained, "To be protected, communications must be made in the course of a 'joint effort with respect to a common legal interest' and for the purpose of furthering that effort." *Id.* (quoting *Lawson,* 410 F. Supp. 3d at 1209). "Courts have generally required that the nature of the parties' common interest 'be identical, not similar, and be legal, not solely commercial.'" *Id.* (quoting *Lawson*, 410 F. Supp. 3d at 1209). The *Coe* court determined that, under the doctrine and the facts in that case, "the attorney-client privilege remain[ed] intact." *Id.* Specifically, the court found that the plaintiffs

had identical legal interests because they sought "injunctive relief and a finding of liability with regard to all [putative class members.]" *Id.* at *8.

The court notes again that "before a communication can be protected under the common interest rule, the communication must meet the other applicable elements of the attorney-client privilege." *Gulf Islands Leasing, Inc. v. Bombardier Cap., Inc.,* 215 F.R.D. 466, 470 (S.D.N.Y. 2003). Even if Theriault had demonstrated that the FSD victim's communications with attorneys were privileged, the factual record he presents does not support a finding that the common-interest doctrine applies. Certainly, the record here would support a finding that the participants in the email thread were all victims in the sense that their precious metals went missing, but that is a common *commercial* interest in somehow recovering their investments. Unlike in *Coe*, Theriault has not demonstrated that his putative co-plaintiffs had an identical *legal* interest. Rather, he states that the victims came together "in a common effort to find legal counsel" and in a "common effort to seek legal advice." (ECF 325, at 2-3, 5.) This does not provide sufficient detail to demonstrate the victims have an identical legal interest in this lawsuit. *See, e.g., Lawson,* 410 F. Supp. 3d at 1210 (holding "a shared desire for [plaintiff] to prevail in litigation . . . does not amount to a common legal interest justifying application of the common-interest doctrine"); *In re Pac. Pictures Corp*., 679 F.3d 1121, 1129 (9th Cir. 2012) ("[A] shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within [the common interest] exception."). In *Coe*, the plaintiffs were tethered together for the long haul in that their claims all arose from living in the same apartment complex with alleged habitability problems and they sought the same injunctive relief against the property owner and manager. But the extent to which the various FSD victims were sufficiently situated with respect to their potential legal claims that they shared an identical legal interest here is less clear. For one, plaintiffs here seek "actual

damages in the amount of any losses Plaintiffs and the Class suffered, including but not limited to the loss of the value of Plaintiffs' precious-metals SDIRAs and the cumulative value of all of the losses to all of Class Members' affected SDIRAs." (ECF 1, at 36.) Also, the circumstances under which the various victims' losses may have implicated claims against differing defendants, and perhaps under different states' laws, is unclear. Given the lack of clarity that the FSD victims' legal interests were identical at that preliminary point in time, Theriault has not established that the putative plaintiffs' legal interests were identical.

In the end, Theriault has not submitted a record from which the court can conclude that he has met his burden of demonstrating that prospective class-members' communications with attorneys were privileged to begin with. And even if he had met this burden, he has not demonstrated that the privilege was not waived by the disclosure of the communications amongst the putative class members based on the applicability of the common-interest doctrine. In short, *Coe* does not stand for the proposition that such communications are privileged as a matter of law, and Theriault has not provided a factual record that provides the court with enough information to support his privilege claims. Accordingly, New Direction's motion to compel the withheld emails (without redactions) is granted.

## III. MOTION TO COMPEL TELEGRAM COMMUNICATIONS (ECF 323)

New Direction's second motion asks the court to order Theriault to "produce the *complete* Telegram communications among members of the FSD victims group." (ECF 323, at 2 (emphasis added).) Theriault has produced his own Telegram messages, but generally not messages posted by others in the Telegram group conversation. The second motion further asks the court to overrule

the attorney-client-privilege protection Theriault asserted over some of the information in his Telegram messages, which he redacted.

### A. GROUP MESSAGES

New Direction contends that the group Telegram messages are responsive to discovery requests and are highly relevant, and asserts that the court should compel Theriault to produce them based on Theriault's promise during the September 10 discovery conference. During the conference, the parties stated that Theriault does not have access to the Telegram account housing those communications because he removed himself from the FSD victims Telegram group on March 9, 2023. (ECF 335-2, at 11-12.) Plaintiffs' counsel explained that defense counsel asked him to "undertake alternative efforts or ways to find these postings from Dr. Theriault," and that "through another participant in the group, [plaintiffs' counsel was] able to get screen shots of his posts."[2] (*Id.* at 12.) Plaintiffs' counsel stated, "we have those," i.e., the screen shots of Theriault's posts, and that Theriault was willing to produce them, subject to privilege redactions. (*Id.* at 12-13.) The court memorialized this agreement in an order following the conference, writing, "Theriault has agreed to produce his Telegram communications with other FSD customers to the extent that he can access them and subject to any privilege objection." (ECF 311, at 2.)

Theriault produced the screenshots of his Telegram messages by the date ordered by the court. In the current motion, New Direction complains that the production only included the screenshots of Theriault's messages, not messages posted by other participants in the conversation. New Direction asserts that plaintiffs' counsel, during the discovery conference, stated that "he was

[2] Theriault's response to the motion also explains that another member of the FSD victims' Telegram group "provided screenshots of Dr. Theriault's posts . . . [but] did not provide screenshots of the posts of other participants." (ECF 333, at 3.)

able to access group communications 'through another participant.'" (ECF 323, at 2.) New Direction is mistaken. The court has reviewed the transcript of the September 10 discovery conference and has found no reference to Theriault or his counsel representing having access to group communications. Rather, as set out above, plaintiffs' counsel stated he had gained access to screen shots of Theriault's posts. (ECF 335-2, at 12 (referencing "postings from Dr. Theriault" and "screen shots of his posts.")) Theriault has produced those posts and, therefore, has satisfied his agreement. To the extent New Direction's motion asks the court to compel further FSD group conversations based on Theriault's promise during the conference, it is denied.[3]

**B. REDACTIONS TO THERIAULT'S MESSAGES**

New Direction's motion also asks the court to order Theriault to re-produce the screenshots of his Telegram messages without redactions for privilege. The parties largely stand on their arguments made with respect to the first motion to compel Theriault's email communications with other FSD victims.

Theriault included ten Telegram messages on this privilege log. (ECF 323-2, at 14-15.) He provided even less information on the log about his Telegram messages than about his email communications, omitting the date of all but one message. More significantly, as with his emails, Theriault does not provide New Direction or the court with sufficient information about the underlying attorney-client communication for the court to find that the privilege applies. Although Theriault's response brief represents that the communication was with his present counsel (both before and after he engaged counsel), he again does not attempt to meet his burden of demonstrating the attorney-client privilege applies by discussing the circumstances of his

[3] Of course, it is the parties' prerogative to attempt to reach a separate agreement on Theriault seeking and producing screenshots of Telegram posts by other group members.

discussions, such as whether they were initially made and kept in confidence. And with respect to Theriault sharing the communications with other FSD victims though Telegram, he again does not demonstrate that the recipients shared an identical legal interest such that the common-interest doctrine applies as an exception to waiver.

Theriault relies on his arguments made in response to the motion to compel his emails to support his privilege objections, and the court overrules the objections for the reasons set out above as to the emails. Accordingly, New Direction's motion to compel is granted to the extent that it asks the court to order Theriault to re-produce his Telegram messages without redactions.

**IT IS THEREFORE ORDERED** that New Direction's motion to compel Theriault to produce documents being withheld under the attorney-client privilege (ECF 322) is granted. Theriault is ordered to produce the documents, in unredacted format, by **November 2, 2026**.

**IT IS FURTHER ORDERED** that New Direction's motion to compel Theriault to produce Telegram communications (ECF 323) is granted in part and denied in part. To the extent the motion is granted, Theriault is ordered to produce unredacted documents by **November 2, 2026**.

Dated October 23, 2026, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell